Reading Trust Company Tax Assessment Case.

278

Argued November 12, 1940.

Before CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John P. Wanner*, City Solicitor, with him *Alan Haw-
man, Jr.*, Assistant City Solicitor, for appellant.

*Geo. B. Balmer*, with him *Thos. Iaeger Snyder*, of
*Zieber & Snyder*, for appellee.

OPINION BY BALDRIGE, J., January 30, 1941:

The pivotal question before us in this appeal by the City of Reading is whether the Reading Trust Company took its appeal from the board of revision of taxes to the Court of Common Pleas of Berks County within the 60 day limitation prescribed by section 2521 of Article XXV of Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-2521. This section provides: "Any owner of taxable property who may feel aggrieved by the last or any future assessment or valuation of his taxable property may appeal from the decision of the board of revision of taxes and appeals to the court of common pleas of the county within which such property is situated, and, for that purpose, may present to said court, or file in the prothonotary's office, *within sixty days after the board of revision of taxes and appeals have held the appeals* provided for by law *and acted on the said assessments and valuations,* a petition signed by him, his agent, or attorney, setting forth the facts of the case." (Italics supplied).

When notified of the assessment of premises No. 1221 Eckert Avenue at $14,800 the Reading Trust Company appealed. That appeal and many others taken by the trust company from assessments on properties owned by it were heard by the city council sitting as the board of revision of taxes on November 20, 1939. By letter mailed December 11, 1939, the board advised the Reading Trust Company that the assessment was approved and would not be reduced. The trust company, acting under section 2521 of the Act of 1931, supra, filed its appeal in the court of common pleas on February 5, 1940.

At the hearing held before the court the city offered testimony in support of its contention that the board had acted and finally disposed of all the appeals on the same day they were heard. At the conclusion of the evidence offered by both parties the city made a motion

to dismiss the appeal because it was not filed within sixty days of November 20, 1939, the date of the board's alleged final action. The court, made certain findings of fact, refused the city's motion, and reduced the assessment on this particular property from $14,800 to $12,500. This appeal followed.

Our decision herein will have an important bearing upon approximately 600 cases pending in the court below, involving the matters here in controversy. Counsel have submitted testimony taken in another of these appeals and stipulated it should form part of the record in this case. We shall discuss therefore the questions raised by appellant, including the board's duty respecting the giving of notice of its decisions to taxpayers or property owners taking an appeal, more fully than it might otherwise be necessary.

The learned court below found the following fact: "2. There was no final decision upon appellant's appeal by the board of revision of taxes and appeals made on November 20, 1939." In dismissing the city's motion to quash, the court held it had not borne the burden of proving that the trust company's appeal was filed after the expiration of the 60 day period. In an appeal to this court from a tax assessment the findings of fact of the court of common pleas, when all factors entering into the determination of the fair market or assessable value were considered, are entitled to great weight and will not be disturbed, especially where they are not contrary to the weight of the evidence: *Westbury Apartments, Inc. Appeal,* 314 Pa. 130, 170 A. 267; *Edmond's Appeal,* 314 Pa. 382, 384, 172 A. 103; *Elizabeth Steel Magee Hospital Tax Assessment Case,* 326 Pa. 245, 191 A. 587; *Hickey's Appeal,* 326 Pa. 467, 470, 192 A. 923.

We find no trouble in concluding that there was ample evidence to support the court's finding that the board took no final action on November 20, 1939. On that date it heard 730 appeals, principally on assess-

ments of property held by trust companies and banks in the City of Reading, and only one assessment was changed. Members of the board testified that they had an agreement among themselves not to change any assessment except on the ground of inequality and to approve them as a matter of course until one of their members raised some question about the particular assessment. No formal minutes were kept other than loose sheets of paper held together by clips, on which were listed the location of the property, the assessment, and a notation "Approved" after each item.

Members of the board and the city assessor called out the properties on which assessments were appealed. If no objections were raised by the members of the board the assessment was marked for approval. No announcement of this fact was, however, apparently made to any of the taxpayers present, whose appeals were pending.

Two members of the board, Charles A. Hofses, and Paul A. Wenrich, admitted that the mayor, in every case, said to the taxpayer, their agent or counsel: "We will notify you what action Council has taken" and "we will consider them and let you know later." This testimony was corroborated by various counsel and agents present at this hearing.

Copies of the so called "minutes" of council, introduced in evidence did not in any manner show when the board acted and the oral statements of its members and secretary, that final action was taken on the date of the appeals, were contradicted and outweighed by admissions of these same witnesses that the taxpayers were that day advised that the board would consider the appeals and notify them later of its actions.

We agree with the court below that the city failed to carry the burden which undoubtedly rested upon it of showing that the appeals to the court were taken after the 60 day period expired. The 60 day limitation for

taking an appeal under section 2521 of the Act of 1931, supra, being mandatory, *Nixon v. Nixon,* 329 Pa. 256, 259, 198 A. 154, *Rumsey's Case,* 135 Pa. Superior Ct. 515, 517, 7 A. 2d 43, the question here is, on what date does the limitation period begin to run? The act states "within sixty days after the board......have held the appeals......and *acted* on the said assessments and valuations." (Italics supplied). This record clearly discloses that a taxpayer will not know exactly when the board has acted on his appeal until some notice of the fact is given to him.

Boards of revision are quasi-judicial bodies (*Moore v. Taylor,* 147 Pa. 481, 483, 484, 23 A. 768; *Susquehanna Collieries Company's Appeal* 335 Pa. 337, 343, 6 A. 2d 831) but the time and date of their final decision or action is not a matter of public record to the same extent as a judgment of a court of record, in which case, of course, the limitation for the appeal runs from the entry of the judgment, order or decree: Act of May 19, 1897, P. L. 67, as amended (12 PS §1136).

Our Supreme Court has had occasion in several instances to refer to the apparent informality with which the records of county boards of revision are kept and the proceedings conducted. In *Susquehanna Collieries Co's. Appeal,* supra, Chief Justice KEPHART remarked (page 344) : "The failure of the county Boards of Revision to make proper records of their proceedings, has resulted in confusion in many cases and has been commented on by the appellate courts. See *Graham v. Commissioners of Lawrence County,* 99 Pa. Superior Ct. 245, 251; *Lehigh & Wilkes-Barre Coal Co.'s Assessment,* 225 Pa. 272, 275-276. It is true that the statutes prescribe no form of procedure, and it is common knowledge that the hearings before these Boards are conducted with extreme informality. It is desirable, of course, as in all other administrative proceedings, that the administrative body should not be burdened or re-

stricted by technical rules of pleading and evidence. Nevertheless, some orderly method of conducting and recording hearings should be adopted......In no event, however, can the right of the taxpayer to appeal to the court of common pleas be prejudiced by irregularity in the records of the Board of Revision. In *Lehigh & Wilkes-Barre Coal Company's Assessment,* 225 Pa. 272, this Court reversed the court of common pleas which had held that the records of the taxing authorities were insufficient to provide the basis for an appeal. It was said, at page 276: 'The taxpayer must of necessity accept the record as he finds it, but his right of appeal under the law, cannot be denied him, because perchance the records of his assessment may have been indifferently kept.' "

In *Belcher's Estate,* 211 Pa. 615, 61 A. 252, the statute involved gave a person not satisfied with an inheritance tax appraisement in a decedent's estate, the right to appeal "within thirty days" to the orphans' court, but did not fix in any manner the date as of which the limitation period commenced. Chief Justice MITCHELL stated at page 618: "The time for appeal is thus limited to thirty days but the terminus a quo the thirty days are to run is not named, nor is there any express provision for notice. But the requirement of notice is necessarily implied in the right of appeal, for without notice the 'party not satisfied' has no certain means of learning that the time for him to move has come, and the privilege of appeal would be nugatory unless he should be fortunate enough to discover the proceeding from other sources. The statute, it is to be noted, fixes no time or mode of procedure......The proceeding was in no sense a judicial one, of whose successive steps parties were bound to take notice. In *Hadley's Estate,* 181 Pa. 339, it was said, 'the statute makes no express provision for notice to them (the legatees) but it gives them the right of appeal, and it would therefore be

proper if not requisite that the court should see that notice and a hearing are given. Without such notice and hearing, it is not consistent with the universal principles of law that the parties charged should be affected by the adjudication.' The point was only incidentally touched in the case, and that was as far as it was necessary to go. But now that the question is directly raised we hold that notice of the filing of the appraisement is necessarily implied in the right of appeal given by the statute, and the thirty days' limitation of the right begin only from such notice." Appeals from inheritance taxes are analogous to appeals from the action of county commissioners sitting as a board of revision: *Webster's Estate*, 314 Pa. 233, 237, 171 A. 568.

In the instant case the period is described as running from the date of the "action" of the board, but unless such date shall become known to the taxpayer by reason of notice, the period of limitation remains as indefinite as though no terminus was named.

City council sitting as a board of revision was performing the functions of and acted as an administrative body. No all inclusive rule as to a requirement of notice of an administrative board's action in order to determine the running of a limitation period for taking an appeal can, of course, be laid down. Each case depends on the provisions of the statute involved and the type of order or ruling appealed from. The limitation period for appeal from the orders of certain other administrative bodies, does not begin to run until the parties concerned receive notice of the board's final ruling. For example, an appeal from an order of the Workmen's Compensation Board to the court of common pleas must be brought "within twenty [formerly ten] days after *notice of the action* of the board has been served upon such party......" Section 427 of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §873, (Italics sup-

plied). Appeals from the order of the Public Utility Commission to this Court must be taken, under Article XI, Sec. 1101 of the Act of May 28, 1937, P. L. 1053, 66 PS §1431, "within thirty days after the *service* of any order by the commission......" (Italics supplied). Previous local acts giving a right of appeal in tax assessments from the county commissioners to the court of common pleas, provided the appeal could be had "within thirty days after the county commissioners shall have informed him or her of their decision......" Act of April 1, 1836, P. L. 436, Sec. 52; Act of April 26, 1850, P. L. 626, Sec. 7; Act of April 9, 1869, P. L. 815; Act of May 10, 1871, P. L. 665; Act of March 6, 1872, P. L. 215. (See 72 PS §5242 and notes therein.)

Taxing statutes generally should be construed most strictly against the government and most favorably to the taxpayer: *Husband's Estate,* 316 Pa. 361, 369, 175 A. 503. The legislature has by statute given the taxpayer a right to appeal from the board of revision to the court of common pleas. We may assume that in granting such right the law-making body intended the board of revision to follow the established fundamentals of orderly procedure before administrative tribunals, and notify the taxpayer of its action on the appeal. Such notice makes certain an otherwise indefinite and illusory right granted the taxpayer and imposes no undue hardship upon the taxing authorities in assessing or collecting the tax.

It is interesting to note that in the present case the board apparently considered notice necessary as its secretary did in fact notify the property owners by letter sent December 11, 1939, of the board's action in approving the assessments.

In conclusion we may state that in our judgment the legislature, in granting the right of appeal under section 2521, supra, implied that the sixty-day period began to run only from the time the board notified, or took

steps reasonably calculated to give the taxpayer notice, of its action on his or her appeal. In this respect our holding is directly contrary to that of the Court of Common Pleas of Lycoming County in *Appeal of Susquehanna Market House Company*, 21 D. & C. 373.

The judgment is affirmed.