# Commonwealth v. Sheraton-Midcontinent Corporation

Before Sohn, P. J., Kreider, Herman and Shelley, JJ.

*Krekstein & Rubin*, for appellant.

*Eugene J. Anastasio*, Deputy Attorney General, for Commonwealth.

BOWMAN, J., July 20, 1964,—This matter is before the court on appeal by the Sheraton-Midcontinent Corporation (successor to Pittsburgh Hotels, Inc.), appellant, from the action of the Board of Finance and Revenue in refusing appellant's petition for redetermination of additional realty transfer tax assessed against it by the Pennsylvania Department of Revenue. The

facts have been stipulated by the parties, which facts are adopted as the findings of fact by the court, and are set forth in this opinion to the extent deemed necessary to an understanding thereof. Jury trial was dispensed with by written agreement of the parties.[1]

Two related but independent questions confront the court in this appeal. The one question is whether the Realty Transfer Tax Act is applicable to a transfer of real estate from a domestic corporation to one of its shareholders incident to a plan of dissolution and liquidation of such a corporation. This question will be first discussed and resolved. The other question goes to the right of the Commonwealth to assert the additional realty transfer tax here involved under the facts peculiar to this case and the then existing statutory law. If appellant's position is sustained as to either of the two questions raised, then the Commonwealth improperly imposed the tax in question without regard to the soundness of appellant's position as to the other question.

Appellant is a corporation organized and existing under the laws of the State of Delaware. Pittsburgh Hotels, Inc., was a corporation organized and existing under the laws of the Commonwealth. At the time of the adoption of a plan of liquidation and dissolution of Pittsburgh Hotels, Inc., by the shareholders thereof, appellant owned approximately 92 percent of the shares of common stock of Pittsburgh Hotels, Inc. Pursuant to the plan of liquidation and dissolution of Pittsburgh Hotels, Inc., a deed was executed and acknowledged by its officers in Boston, Mass., on December 31, 1956, whereby a tract of real estate situate in the City of Pittsburgh, Pa., was conveyed to appellant, and which deed was delivered to appellant in Boston, Mass.,

---

[1] As authorized by the Act of April 22, 1874, P. L. 109, 12 PS §688.

on the same date. On January 25, 1957, said deed was presented for recording and was duly recorded in the office of the Recorder of Deeds in Allegheny County and has been recorded in deed book, vol. 3527, page 715. At the time of recording, there were affixed to said deed Pennsylvania realty transfer tax stamps in the amount of $34,426. The recited consideration in said deed is grantee's assumption and promise to pay the principal balance of an indebtedness in the amount of $3,442,600 secured by a certain indenture of mortgage from Pittsburgh Hotels, Inc., to Peoples Pittsburgh Trust Company, trustee, dated January 1, 1937.

The applicable statutory law in effect on both the dates of December 31, 1956, the date of the deed, and January 25, 1957, the date it was presented for recording, was the Realty Transfer Tax Act of December 27, 1951, P. L. 1742, as *then* last reenacted and amended by the Act of June 1, 1955, P. L. 128, and as further amended by the Act of March 15, 1956, P. L. (1955) 1295.

The imposition section of said tax act at that time provided as follows:

"Section 3. Every person who makes, executes, delivers, accepts or presents for recording any document, or in whose behalf any document is made, executed, delivered, accepted or *presented for recording,* shall be subject to pay for and in respect to the *transaction* or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one (1) percentum of the value of the property represented by such document, which State tax shall be payable at the time of making, execution, delivery, acceptance or presenting for recording of such document." (Italics supplied.)

At that time, section 2 of said act defined these pertinent words as follows:

" 'Document.' Any deed, instrument or writing whereby any lands, tenements, or hereditaments within this Commonwealth or any interest therein shall be granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person, but does not include wills, mortgages, transfers between husband and wife, transfers between parent and child or the spouse of such a child or between parent and trustee for the benefit of a child or the spouse of such child, by and between a principal and straw party for the purpose of placing a mortgage or ground rent upon the premises, correctional deeds without consideration, transfers to the United States, the Commonwealth of Pennsylvania, or to any of their instrumentalities, agencies or political subdivisions, by gift, dedication or deed of confirmation in connection with condemnation proceedings, and leases.

" 'Person.' Every natural person, association, or corporation. Whenever used in any clause prescribing and imposing a fine or imprisonment, or both, the term 'person' as applied to associations, shall mean the partners or members thereof, and, as applied to corporations, the officers thereof.

" 'Transaction.' The making, executing, delivering, accepting, or presenting for recording of a document."

In Sablosky v. Messner, 372 Pa. 47 (1952), decided under the originally enacted Realty Transfer Tax Act of December 27, 1951, P. L. 1742, the Pennsylvania Supreme Court, in affirming this court, which upheld the constitutionality of the act against a many-pronged attack, described the incidence of the tax as follows, page 50:

"We think it clear that the tax imposed is upon transactions relating to real estate as evidenced by documents as the latter are defined in Section 2 of the Act, . . ."

Also see Commonwealth v. Willson Products, Inc.,

412 Pa. 78 (1963); Higley, Administrator of Veterans Affairs v. Gleeson, Secy. of Revenue, 73 Dauph. 297 (1959).

In Smith v. Messner, 372 Pa. 60 (1952), also decided under the act as originally adopted, the Pennsylvania Supreme Court reversed this court and held that a written agreement to sell real property was not, in and of itself, subject to the tax. In reaching this conclusion it said, pages 62 and 63:

"The Act defines 'Document' as 'Any deed, instrument or writing whereby any lands, tenements or hereditaments within this Commonwealth or any interest therein shall be granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person, . . .' The learned chancellor and court en banc held that an agreement for the sale of real estate fell within the intendment of the Act because the term 'Document' included '. . . lands, tenements, or hereditaments . . . or any interest therein . . .' upon the theory that when a contract is made for the sale of land, equity considers the purchaser of the estate sold as acquiring an equitable interest therein. We are constrained to disagree with this conclusion. It is true that upon the execution of a contract for sale of real estate, equity regards the purchaser as obtaining an equitable interest, *but the agreement of sale does not convey such equitable interest. It creates one arising through operation of law; it does not convey one.* We think that the crucial words in considering the provision of the Act in question are 'or otherwise conveyed', as above emphasized, and that they control the meaning of the preceding words 'granted, bargained, sold', limiting them to their well established technical meaning: See Statutory Construction Act of 1937, P. L. 1019, Art. III, Sec. 33. An agreement of sale is an undertaking to execute and deliver an instrument of conveyance and the latter is something separate and apart from the agreement of

sale itself. The words 'or otherwise conveyed' contemplate an executed conveyance and impliedly exclude agreements to convey which are executory in nature with mutual promissory obligations." (Italics supplied.)

With one important exception, no changes significant to the question here in issue had been made to the act from its original enactment to the date the deed in question was presented for recording in Allegheny County. The Act of June 1, 1955, P. L. 128, however, did incorporate into section 3 of the act, by which section the tax is imposed, the phrase "or presents for recording," thus making not only the making, execution, delivery or acceptance of a "document" relating to a real estate transaction subject to the tax but also the presenting for recording of such a "document."

Applying these statutory provisions as construed by the foregoing decisions to the facts of this case, appellant, a person, on January 25, 1957, presented for recording to the Allegheny County Recorder of Deeds a deed conveying to appellant land within this Commonwealth, a document, the incidence of the tax being upon the transaction relating to such real estate, which places it squarely within the language of section 3 of the act, as then amended.

Appellant contends, however, that since the real property of a corporation equitably belongs to its shareholders, a deed of conveyance pursuant to a plan of dissolution from the dissolving corporation to one of its shareholders is not a "real transfer of a beneficial interest" and, hence, not subject to the tax. In support of its position, appellant recites language found in the Sablosky decision, supra, and a subsequent decision of this court in American Machine and Metals, Inc. v. Dougherty, 78 Dauph. 239 (1961), affirmed by the Supreme Court in Commonwealth v. Willson Products, Inc., 412 Pa. 78 (1963).

Rather than supporting appellant, in our opinion these decisions support the taxability of the transaction here in issue. In the Sablosky decision, Mr. Justice Chidsey, in holding the original act constitutional against a contention, among others, that the definition of "value" for the purpose of determining the *amount* of tax liability lacked uniformity, did state, page 55:

". . . it is true that the tax is imposed upon gifts but not upon other transfers without actual consideration, but this is because the Act's clear import, despite some lack of clarity in the language employed, is to impose a tax only upon transactions *where there is a real transfer of beneficial interest; . . .*" (Italics supplied).

Whatever thereafter may have been construed to constitute a "real transfer of a beneficial interest" was promptly clarified by the Supreme Court in its companion opinion in the Smith case, as set forth in the foregoing quoted portion of that decision. This opinion clearly indicates that while an equitable interest in real estate *created* by operation of law upon the execution of an instrument in writing does not of and in itself make the transaction a taxable one, the conveyance *of even an equitable interest* would be so taxable. Hence, a *conveyance* of a beneficial interest must be held to be a *real* transfer of such an interest.

In American Machine and Metals, Inc., supra, this court concluded that the change of ownership of real estate brought about by a merger of two corporations was not subject to the tax, the stockholders of the merged corporation being considered the beneficial owners of the real estate owned by it, because the transfer was not evidenced by a document as defined in the act and, hence, not a taxable transaction, i.e., the change of ownership was not evidenced by a deed

or other instrument in writing whereby land or any interest therein was *conveyed.*

Whatever support appellant may believe these decisions lend to its position, and we believe they lend no support as here there was a *conveyance* of a beneficial interest, its position completely ignores the fact that not only was there a conveyance of a beneficial interest but a *conveyance* of the legal title as well within the exact language of section 3 of the act.

Section 1102 of the Business Corporation Law,[2] relating to voluntary dissolution of domestic corporations, provides that the same may be accomplished either by written agreement of all shareholders or by adopting of a resolution to that effect by the board of directors and approved by a majority of the shareholders. Section 1104 of said act,[3] pertaining to the winding up procedure of a corporation in dissolution provides, in pertinent part, as follows:

". . . Any surplus of cash or property remaining after paying off all debts and liabilities of the corporation *shall be paid to or distributed among the shareholders* . . ." (Italics supplied).

Similar language is found in section 1105 relating to filing of the articles of dissolution.

Contrasting these statutory provisions with the provisions of the same act relating to the merger or consolidation of corporations,[4] they manifestly require that the dissolving corporation, through its officers, must effect, by appropriate legal instrument, the dis-

---

[2] Act of May 5, 1933, P. L. 364, as amended by the Act of August 27, 1963, P. L. 1355, 15 PS §2852-1102.

[3] As last amended by Act of August 27, 1963, P. L. 1355.

[4] Section 907, 15 PS §2852-907, which provides that upon the effective date of the merger ". . . All the property, real, personal, and mixed, of each of the corporations parties to the plan of merger *shall be taken and deemed to be transferred to and vested in the surviving . . . corporation, . . . without further act or deed.*"

tribution of the remaining assets of the corporation, and that there is no vesting of title, legal or equitable, by operation of law in the shareholders of the dissolving corporation such as in the case of mergers. Therefore, to effect the distribution of the real estate here in question as required by the Business Corporation Law, the dissolving corporation, through its officers, by deed of conveyance (a) transferred the legal title to the real estate in question, and (b) by the execution and delivery of the deed of conveyance made a real transfer of the beneficial interest or equitable title held by the shareholders.

In our opinion, upon said deed of conveyance being presented for recording, the transaction here in question constituted a taxable transaction relating to real estate within the meaning of section 3 of the Realty Transfer Tax Act as then in effect, and we, therefore, so hold.

For an understanding of, and solution to, the second question raised by appellant, it is necessary to recite in some detail the sequence of events, the existing administrative procedures and the changing statutory provisions of the act.

As heretofore recited, the deed in question was executed, acknowledged and delivered in Massachusetts on December 31, 1956, and presented for recording in Allegheny County on January 27, 1957, at which time realty transfer tax stamps in the amount of $34,426 were affixed to the deed. The consideration recited in the deed was that of the assumption by the grantee, appellant, and its promise to pay the principal balance of a certain mortgage indebtedness of $3,442,600. At that time, therefore, one or both of the parties to the deed determined the "value" of the real property in question to be equal to that of the mortgage indebtedness so assumed, with the resulting tax

liability, at the rate of one percent, as evidenced by the tax stamps affixed to the deed.[5]

At the dates of the execution of the deed and its presentment for recording, the Realty Transfer Tax Act[6] contained no specific provisions pertaining to determinations of additional tax liability by the Commonwealth in those cases where it considered the admitted tax liability to be understated.

The act then did provide as follows:

"Section 7.[7] The department is hereby charged with the enforcement of the provisions of this act and is hereby authorized and empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to: . . .

"(c) Any other matter or thing pertaining to the administration and enforcement of the provisions of this act."

It was not until September 3, 1957 that the Department of Revenue adopted regulations covering the subject of administrative determination of additional tax liability, at which time it issued regulations which provide, in pertinent part, as follows:

"Art. V.—Determination of Correct Tax—

"The Department shall examine all Documents and Affidavits of Value to ascertain whether or not the full amount of tax has been paid. If such examination discloses that the consideration set forth in the Document is not the proper base for the tax, or that the value declared in the Affidavit of Value is incorrect, it shall make a Determination of the correct tax due in the Commonwealth.

---

[5] Which suggests that appellant at that time considered the transfer to be a taxable transaction contrary to the position it takes in this appeal.

[6] As reenacted and amended by the Act of June 1, 1955, P. L. 128.

[7] Section 6 of the original enactment of December 27, 1951, P. L. 1742, the section being renumbered by the Act of 1955, supra.

"Promptly after the date of any such determination, the Department shall send by mail a copy thereof to all parties subject to the tax.

"Within ninety (90) days after the date upon which the copy of any such determination was mailed, a taxpayer may file with the Department a Petition for Redetermination of such tax . . .

"The Department shall take action on the petition and notice thereof shall be promptly mailed to the petitioner.

"Within ninety (90) days after the date of mailing of notice by the Department of the action taken on any petition for redetermination filed with it, the taxpayer, against whom such determination was made, may, by petition, request the Board of Finance and Revenue to review such action."

On February 1, 1960, more than three years after the deed in question had been presented and accepted for recording with tax stamps affixed thereto in the amount heretofore mentioned, the Department of Revenue, under the authority of the foregoing regulation, made a determination of correct tax liability of $100,000 based upon the "value" of the real property in question placed thereon by the department. After credit for tax previously paid on the transaction, this determination resulted in an additional tax of $65,574, plus interest computed to date of the determination of $12,131.29.

Thereafter, appellant, in the manner prescribed by said regulations, filed its petition for redetermination in which it denied (1) the power and authority of the department under the act to adopt such regulations, (2) the right and power of the department to retroactively apply said regulations, and, assuming the validity of the regulations and their retroactive application, the correctness of the department's valuation of the transaction with the resulting additional tax.

After hearing on appellant's petition, the department made a redetermination on June 21, 1960, wherein the department redetermined the correct tax liability to be $85,000, which, after credit for the tax previously paid, resulted in an additional tax of $50,574, plus interest computed to July 21, 1960, of $10,586.15.

A petition for review was then filed by appellant with the Board of Finance and Revenue and, after hearing, the board refused the petition and sustained the action of the department. This appeal then followed.

At all times before the various administrative agencies, appellant maintained that the department lacked the power and authority to proceed as it did and denied that the "value" of the real estate exceeded the amount of the principal balance of the assumed mortgage indebtedness, upon which amount the realty transfer tax was paid. The various administrative decisions rendered in the above-mentioned proceedings do not disclose any findings or conclusions in reaching the results mentioned in refutation of appellant's contention as to the power and authority of the department to proceed as it did or in support of the additional tax liability determined by the department to be payable.

However, appellant in its specification of objections filed in this appeal does not raise the issue of the *amount* of the asserted additional tax liability and, while specifically objecting to the asserted interest imposed upon the alleged additional tax liability, did not brief or orally argue this point. These points will not, therefore, be discussed nor resolved.[8]

The remaining issue, therefore, is whether the Commonwealth had any authority in law to impose upon

---

[8] Commonwealth of Pennsylvania v. Stephano Brothers, 54 Dauph. 329 (1943).

the real estate transaction in question the asserted additional tax liability under the applicable statutory law and under the facts peculiar to this case.

It should be noted at this point that the legislature in 1961, after making the realty transfer tax a permanent tax,[9] further amended the act by adding a new section specifically empowering the department to make determinations of additional tax and prescribing procedures for redetermination, administrative appeal and review and ultimate appeal to this court. A limitation of three years from the date of the recording of the document was placed upon the department in the making of any such determination.[10]

In its brief and at oral argument, the Commonwealth relied solely upon the rule-making power conferred by the legislature upon the Department of Revenue in section 7 of the act, supra, as its authority for the adoption of the recited regulations and for the assertion of the additional tax liability here in issue. It points to no other statutory authority to support its position and suggests that the legislature in enacting the Act of February 9, 1961, P. L. 13, supra, did so "to clear up any possible doubt" as to the authority under which the Department of Revenue had theretofore proceeded, such as it did in this case.

That the matter is not free from "possible doubt" was suggested, but not decided, by the Pennsylvania Supreme Court in Commonwealth v. Haveg Industries, 411 Pa. 515 (1963),[11] wherein the Commonwealth, in asserting an additional tax liability, had employed the same procedure as here. The court stated, page 518:

---

[9] Act of February 9, 1961, P. L. 13.

[10] Act of June 7, 1961, P. L. 272.

[11] Affirming this court in holding that the "assembled plant doctrine" is not applicable to determination of value under the Realty Transfer Tax Act.

"Initially, we note that, although Haveg raised certain questions regarding the validity of the procedure followed by the Department of Revenue in its effort to collect this tax, neither the court below nor the parties in their arguments here have referred to these issues. Although we feel that the questions are serious ones, we shall refrain from deciding them now in view of the posture of this appeal and pass immediately to the substantive issue."

In Pennsylvania, it has historically and uniformly been held that taxation is purely statutory, and liability for payment of the tax can be enforced only by strict compliance with the statutorily prescribed procedures. An early and leading expression of this principle is found in Schmuck v. Hartman, 222 Pa. 190 (1908), in which an assessment and an additional assessment for State personal property taxes were in issue. The court stated, page 195:

"The appellee has undoubtedly withheld from the commonwealth a large sum which he ought to have paid for taxes, and his moral duty unquestionably now is to pay it, but he cannot be compelled to perform that duty unless there is a right in the commonwealth to enforce it as a legal one. All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute. Are the assessments and reassessments made by the appellants sanctioned by any statute? If they are not, they are void. No act of assembly authorizes an assess-

ment of a state tax on personal property after the expiration of the year in which it ought to have been assessed and the taxable ought to have paid it; and yet this is what the appellants did for the years from 1876 to 1884."

A recent expression of this principle and of the rule of construction to be applied to taxing statutes is found in Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370 (1956), wherein the court stated, pages 375 and 376:

" '. . . In Scranton v. O'Malley Mfg. Co., 341 Pa. 200, 204, 205 (1941) it is stated: ". . . Liability to pay taxes arises from no contractual relation between the taxable and the state and cannot be enforced by common law proceedings unless a statute so provides. They can be collected in no other way than that provided by the statute: Schmuck v. Hartman, 222 Pa. 190, 195, 70 A. 1091; Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, 163, 179 A. 904. Tax statutes should receive a strict construction: Boyd v. Hood, 57 Pa. 98. In cases of doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53; U. S. v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69; Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455. While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute. This gives rise to a rule in tax law, of general application, that whatever the law requires to be done for the protection of the taxpayer is usually mandatory and cannot be regarded as merely directory: Black on Tax Titles, Sec. 198." See also Phila. v. Goldfine, 151 Pa. Super. 59, 62 (1942); Speck v. Philips, 160 Pa. Super. 365, 368 (1947); Sauer Appeal, 167 Pa. Super. 33, 35 (1950); Reading Tr. Co. Tax Assessment Case, 143 Pa. Super. 277, 285 (1940); Loeb v. Benham, 153 Pa. Super. 601, 606 (1943); Breitinger v. Phila. et al., 363

Pa. 512, 515 (1950). All of these cases represent situations where the specific provision of the statute which imposed the tax was not in issue or was only part of the issue raised, and in each case the doctrine that the entire taxing statute must be strictly construed was pronounced and applied by the court.' "

In the instant case, however, we are confronted with a situation, which is perhaps unique in the history of Pensylvania taxing statutes, whereby the legislature made no provisions whatsoever, until the 1961 amendment, supra, for the assertion of additional tax liability by the Department of Revenue which it charged with enforcement of the act, but did confer upon the department general rule-making power incident to its duty of enforcement.

Did the conferring of such rule-making power by the legislature upon the department and the department's exercise of such power in the adoption of the heretofore quoted regulations pertaining to the assertion of additional tax liability by "determinations" take this case out of the long-established principle enunciated in the aforementioned decisions?

Appellant contends that it does not, and argues that the power to assert additional tax liability must be statutorily prescribed, and that the absence of such statutorily prescribed power precludes any such assertions, notwithstanding a power conferred upon the enforcing agency to adopt rules and regulations in furtherance of its enforcement responsibility.

In our opinion, this long-established rule, as announced and reiterated in the above-mentioned decisions, cannot be so broadly applied. An examination of the statutes involved in many of the decisions supporting this principle reveals that the particular taxing statute in issue specifically provided for and prescribed procedure to be employed in the assessment of tax liability or assertion of additional tax liability, and it was

the failure of the taxing authorities to strictly follow the statutory provisions that led to a decision adverse to the taxing authorities. It is in this context that we believe the pronounced rule must be applied. Hence, when a taxing statute prescribes procedure for enforcement of asserted additional tax liability, it must be strictly followed. It does not mean, however, that the legislature, having imposed a tax and provided for its assessment, completely lacks the power or authority to delegate to the administrative agency it charges with enforcement, rule-making power pertaining to the assertion of additional tax liability and the enforcement thereof.

Alternately, appellant contends that if the legislature is not precluded from conferring upon the Department of Revenue general rule-making power pertaining to the assertion and collection of additional tax liability, it did *not intend* to do so in this case and points to many statutes imposing State taxes wherein there is found, in addition to a general rule-making power conferred upon the Department of Revenue, specific provisions pertaining to the assertion and enforcement of additional tax liability.[12]

From this, appellant argues it can be inferred that the legislature did not intend to confer upon the department the power to adopt regulations providing for

---

[12] The Liquid Fuels Tax Act of May 21, 1931, P. L. 149, secs. 18 and 7, 72 PS §§2611r and 2611g; Corporate Net Income Tax Act of May 16, 1935, P. L. 208, secs. 9 and 8, 72 PS §§3420i and 3420h; Corporation Income Tax Law, Act of August 24, 1951, P. L. 1417, secs. 9(a) and 8, 72 PS §§3420n-9 and 3420n-8; Fuel Use Tax Act of January 14, 1952, P. L. (1951) 1965, secs. 9 and 7, 72 PS §§2614.9 and 2614.7; Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955) 1228, secs. 580 and 540 to 549.1, 72 PS §§3403-580 and 3403-540 to 3403-549.1; Act of February 21, 1961, P. L. 33, secs. 6 and 5, 72 PS §§2270.6 and 2270.5; Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P. L. 373, secs. 104 and 701 to 1003, 72 PS §§2485-104 and 2485-701 to 2485-1003.

"determinations" of additional tax liability such as those here in issue, and suggests that its position is further buttressed by the rule of strict construction against the Commonwealth that must be applied in interpretation of taxing statutes: Commonwealth v. Allied Building Credits, Inc., supra.

In making this argument, appellant does not attempt to define the scope of the rule-making power which the legislature did specifically confer upon the department in section 7 of the act, but contents itself with the proposition that however broad the scope of this power might be, it is not sufficiently broad to have enabled the department to adopt the regulations here in dispute.

We are, therefore, squarely faced with the problem of ascertaining the legislative intent in conferring upon the Department of Revenue rule-making power relating to its duty in enforcement of the provisions of the Realty Transfer Tax Act as then in effect.

While the legislature did enact provisions pertaining to assertion and enforcement of additional tax liability by the 1961 amendments, supra, which is some indication that it did not originally intend to confer such power upon the department, the adoption of this amendment for any one or more of several reasons, such as giving statutory effect to an existing administrative procedure, are equally consistent with such legislative action and, hence, has little probative value in ascertaining the legislative intent *at the time* here in question.

The object, of course, of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature.[13]

In seeking this legislative intent, it is axiomatic that

---

[13] Section 51, Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

the legislative enactment in all of its pertinent provisions must be considered. An analysis of the pertinent provisions of the act as then in effect reveals the following provisions important to this issue.

Section 2 defined, among other words, "value" to mean "In the case of any document granting, bargaining, selling, or otherwise conveying any land, tenement or hereditament, or interest therein, the amount of the actual consideration therefor, including liens or other encumbrances thereon and ground rents, or a commensurate part of the liens or other encumbrances thereon and ground rents where such liens or other encumbrances and ground rents also encumber or are charged against other lands, tenements or hereditaments: Provided, That where such document shall set forth a small or nominal consideration, the 'value' thereof shall be determined from the price set forth in or actual consideration for the contract of sale, or, in the case of a gift, or any other document without consideration, from the actual monetary worth of the property granted, bargained, sold, or otherwise conveyed, which, in either event, shall not be less than the amount of the highest assessment of such lands, tenements or hereditaments for local tax purposes."

Section 3, which imposed the tax, also provided that the tax so imposed should be "payable at the time of making, execution, delivery, acceptance or presenting for recording of such document."

Section 4 provided, with respect to judicial sales, that the tax be fully paid and have priority out of the proceeds of any such sale.

Section 6 required the Department of Revenue to supply documentary stamps to be affixed to documents in payment of the tax "imposed and assessed by this act" and authorized the department to appoint agents, including recorders of deeds, for the sale of said stamps.

Section 7, as set forth in full above, and as heretofore noted, charges the department with enforcement of the act and confers upon it rule-making power relating to "the enforcement of the provisions of this act."

Section 8 provided that no document "unless documentary . . . stamps as provided in this act have been affixed thereto" shall be made the basis of, or received in evidence in, any legal action *or recorded in any recorder of deeds' office.*

Section 9 provided as follows:

"Every document, when lodged with or presented to any recorder of deeds in this Commonwealth for recording, shall set forth therein and as a part of such document the true, full and complete value thereof, or shall be accompanied by an affidavit executed by a responsible person connected with the transaction showing such connection and setting forth the true, full and complete value thereof or the reason, if any, why such document is not subject to tax under this act.

"Any such recorder of deeds who shall record any document upon which tax is imposed by this act without the proper documentary stamp or stamps affixed thereto as required by this act as is indicated in such document or accompanying affidavit shall, upon summary conviction before any magistrate, alderman or justice of the peace, or other officer having the powers of a committing magistrate, be sentenced to pay a fine of fifty dollars ($50.00) and costs of prosecution, and in default of payment thereof, undergo imprisonment for not more than thirty (30) days: Provided, That when any document shall have been recorded, it shall be presumed that all requirements of law affecting the title to any real property conveyed thereby have been complied with."

Section 10, prescribing certain unlawful acts punishable by fine or imprisonment, made it unlawful (a) to make, execute, deliver, accept or present for recording

any document "without the full amount of tax thereon being duly paid," and (b) to fail, neglect or refuse to comply with or violate departmental rules and regulations promulgated "under the provisions of this act."

In addition to demonstrating the self-assessing nature of this tax and revealing the total absence of any specific provisions relating to assertion of additional tax liability, these provisions also disclose, contrary to appellant's contention, that while criminal sanctions were imposed upon recorders of deeds for accepting documents not bearing tax stamps consistent with the recited consideration or the accompanying affidavit of value, no power or authority was given to recorders to investigate the correctness of the self-assessed tax liability nor to refuse to accept for recording a document to which stamps evidencing the self-assessed liability had been affixed.

Hence, we have a legislative enactment imposing a tax and creating a tax liability, self-assessed in the first instance, which tax liability arises out of a private transaction taking place anywhere within the Commonwealth; without the necessity of making a return or report thereon by the party or the parties upon whom the tax liability was imposed to the governmental agency charged with its enforcement; without specific statutory authority in any person or agency to investigate the correctness of the self-assessed tax liability; and with little likelihood of the taxable transaction becoming a matter of public knowledge until the recording of the document, being the concluding act in the perfection of the title to the real estate. It is also significant that the legislature chose not to impair real estate titles with the uncertainties of the correctness of the self-assessed liability for the tax imposed by providing, section 9, supra, that any document, when so recorded, shall be presumed to have complied with the law.

Under these circumstances, we are of the opinion that the legislature intended the rule-making power which it conferred upon the Department of Revenue to be of the broadest possible scope and to include the power to adopt rules and regulations providing for determinations of additional tax liability when, through investigation, the self-assessed tax liability was considered to have been understated. To construe the legislative intent to be less broad in scope in this particular statute would be to conclude that the legislature intended the self-assessed tax liability to be final and conclusive, no matter how much it was understated, either through the recitation of consideration in the document or in a separate affidavit of value, and, hence, underpaid; and that the Commonwealth was without power or authority to assert a deficiency, being left only with criminal sanctions against the defaulting taxpayer. Such a result would be both unrealistic and unreasonable.[14] In such a case, the rule-making power conferred upon the Department of Revenue by the legislature would be rendered practically meaningless. In reaching this conclusion, we are not unmindful of the rule that "every tax statute must be construed most strongly and strictly against the Government and if there be a *reasonable* doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer": Commonwealth v. Willson Products, Inc., supra. We believe, however, that the very nature of the tax here in question, being one upon transactions relating to real estate involving very large numbers of persons anywhere within the Commonwealth, requiring a system of prompt determination and payment of tax liability in the first instance to avoid impairment of real estate transactions, prompted the legislature to deviate from estab-

---

[14] Clause 1, sec. 52, Statutory Construction Act, supra, 46 PS §552, and cases cited thereunder.

lished or common provisions found in many taxing statutes, and, in doing so, intended to give to the Department of Revenue the broadest possible power to enforce the act through duly adopted regulations, including those pertaining to the assertion of additional tax liability.

Appellant finally contends that assuming the validity of the regulations adopted by the department, to apply them retroactively in the present case would be unlawful, in that it would alter "substantive" rights of appellant and would be contrary to the rule that a retroactive application of a regulation is proper only where a clear and unequivocal intention is expressed that it is to be so applied.

As heretofore set forth, the Realty Transfer Tax Act was first enacted in December 1951 to become effective February 1, 1952, and was successively reenacted and amended and in effect on January 27, 1957, the date of the recording of the deed in question. It was not, however, until September 3, 1957, that the regulations in issue were adopted, almost eight months after the recording date of the deed, and it was not until February 1, 1960, that the department made its determination of additional tax liability, over three years after the recording date of the deed.

While appellant points out that the legislature in *specifically* providing for determinations by the Department of Revenue of additional tax liability by the 1961 amendment, supra, placed a three-year limitation upon the department to act after the recording of a document, it does not seriously contend that the absence of such a limitation in the regulations adopted September 3, 1957, would for that reason alone invalidate a determination made three years after the recording of the deed. It does contend, however, that the regulations in question having been adopted some eight months after the recording of the deed, the determination of addi-

tional tax liability issued pursuant to said regulations is invalid, for the reasons that such action would constitute a retroactive application of the regulation in violation of appellant's "substantive" rights, and because there is no clear and unequivocal intention expressed in the regulations that they would be so applied.

In support of this latter contention, appellant cites Jenkins Unemployment Compensation Case, 162 Pa. Superior Ct. 49 (1948), and Romig Unemployment Compensation Case, 183 Pa. Superior Ct. 366 (1957). In the Jenkins case, the *power* of an administrative agency to give retroactive effect to an amended regulation adopted by it was in issue. In discussing this point, the Superior Court stated, pages 51 and 52:

"The board carefully considered the power of the department to give retroactive effect to the amended regulation and, relying upon Miller v. U. S., 294 U. S. 435, 55 S. Ct. 440, concluded that where the intention that an administrative regulation shall operate retrospectively *unequivocally appears it will be construed to have that effect.* This accords with the general rule relating to statutes. Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556 . . . it is clear that the power to adopt administrative regulations includes power to give them retroactive effect, provided of course that they they do not conflict with restrictions upon legislative power relating to retroactive laws, such as, for instance, the disturbance of vested rights, the impairment of contracts, and the principles relating to due process and ex post facto laws. See 42 Am. Jur., loc. cit. supra, §101; 50 Am. Jur., 'Statutes', §479. Tested by these standards the retroactivity feature of the amended regulation is free from valid objection." (Italics supplied.)

In the Romig case, the issue was whether an amended regulation adopted by an administrative

agency was *intended* to have retroactive application. In discussing this point, the Superior Court stated, pages 370 and 371:

"The Regulation of 1953 was not superseded and repealed until June 15, 1955, which was after claimant's unemployment began and after his claim had been filed and disallowed by the bureau. Moreover, the period of unemployment involved (May 13, 1955, to June 2, 1955) had expired prior to the repeal. The Regulation of 1955, adopted subsequently, may not be applied to claims arising under the Regulation of 1953 unless *it clearly and unequivocally appears that the former was intended to be retroactive in its application.* Jenkins Unemployment Compensation Case, 162 Pa. Superior Ct. 49, 51, 56 A. 2d 686. Such intent is lacking here. The Regulation of 1955 specifies June 15, 1955, as the effective date, and there is nothing in its context which manifests an intention that it operate other than prospectively.

"The fact that the Regulation of 1955 superseded and repealed the Regulation of 1953 does not by itself supply a retroactive intent or affect the determination of claims for benefits for the period prior to its expressed effective date. See Statutory Construction Act of May 28, 1937, P. L. 1019, §96, 46 PS §596." (Italics supplied.)

It is undisputed that the regulations here in issue were adopted by the Department of Revenue on September 3, 1957, and that these regulations for the first time established a system and prescribed procedures for the assertion and enforcement by the department of additional tax liability in those cases where the department considered the tax liability to have been understated and underpaid. We have already determined that the Department of Revenue, under the authority of section 7 of the act, had the *power* to adopt such regulations. Hence, from the original enactment of the

Realty Transfer Tax Act, which first became effective on February 2, 1952, to September 3, 1957, the department chose not to adopt regulations pertaining to this subject matter. It necessarily follows, therefore, that if the adopted regulations are to be considered as having been intended to have retroactive application, such retroactivity would date back not only for an eight-month period prior thereto, but rather back to the original effective date of the act, which is a period in excess of five and one-half years prior to the adoption of the regulations.

In addition to this factual background, the regulations themselves are completely devoid of any language pertaining to their prospective or retroactive application. It is only the general language appearing in the opening paragraph of the regulations to the effect that the department "shall examine all Documents and Affidavits of Value to ascertain whether or not the full amount of tax has been paid," which in any way suggests or infers that the regulations are to have retroactive application for a period in excess of five years.

Such a vague suggestion or inference does not meet the test laid down in the Romig case, supra, as clearly and unequivocally showing an intent that the regulations in question were to be retroactive in application. We, therefore, conclude that absent such a clear and unequivocal intent, the regulations must be considered to have only prospective application, and that the determination and redetermination issued in this case under the authority of said regulations are invalid for the reason that they applied to a taxable transaction which took place some eight months prior to the adoption of said regulations.

Having decided that the regulations do not evidence an intent that they are to be applied retroactively, and that the determination and redetermination issued

thereunder are, therefore, invalid, it is not necessary, and we accordingly express no opinion as to whether a retroactive application of said regulations would adversely affect any "substantive" rights of appellant.

We, therefore, make the following

## Conclusions of Law

1. The presentation for recording of a deed from Pittsburgh Hotels, Inc., a corporation in dissolution, to Sheraton-Midcontinent Corporation, a stockholder of the dissolving corporation, pertaining to Pennsylvania real estate being distributed to a stockholder under a plan of dissolution, constitutes a transaction subject to the Realty Transfer Tax Act of June 1, 1955, P. L. 128, as amended by the Act of March 15, 1956, P. L. 1295.

2. The Department of Revenue of the Commonwealth of Pennsylvania, under the authority of section 7 of the Realty Transfer Tax Act aforesaid, had the power and authority to adopt regulation article 5 pertaining to the determination of additional tax liability and prescribing procedures for the enforcement thereof.

3. Regulation article 5, adopted September 3, 1957, must be applied prospectively and can be so applied only to taxable transactions occurring on and after September 3, 1957.

4. The determination of realty transfer tax dated February 1, 1960, made by the Department of Revenue of the Commonwealth of Pennsylvania against the Sheraton-Midcontinent Corporation and the redetermination of June 7, 1960, are invalid as constituting a retroactive application of regulation article 5, said determination and redetermination having been made incident to a taxable real estate transaction having taken place in excess of eight months prior to the adoption of said regulation.

## Order

And now, July 20, 1964, the appeal of Sheraton-Midcontinent Corporation, successor to Pittsburgh Hotels, Inc., from a determination and redetermination by the Pennsylvania Department of Revenue of additional realty transfer tax incident to the transfer of the real estate in issue is hereby sustained, said invalid determination and redetermination are directed to be stricken from the records of the Department of Revenue and judgment is entered in favor of appellant. The prothonotary shall forthwith notify the parties or their counsel of the entry of this order.