## Commonwealth, Appellant, *v.* Willson Products, Inc.

Argued May 27, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward Friedman,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Robert R. Batt,* with him *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

*Frank A. Sinon,* with him *Alphonse Kenison, Robert D. Myers,* and *Rhoads, Sinon & Reader,* for appellee.

*Thomas V. Lefevre,* with him *Ferdinand P. Schoettle, Jr., Park B. Dilks, Jr.,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1963:

The Commonwealth has appealed in the case of Willson Products, Inc. from a Final Order and in each of the other two cases from a Final Decree of the Court of Common Pleas of Dauphin County. Each Decree restrained the Secretary of Revenue from imposing, assessing or collecting a realty transfer tax in each of said cases. The facts were stipulated in each case; the cases were argued together and will be disposed of in this Opinion.

The basic question involved in each case is the applicability of The Realty Transfer Tax Act[1] to the transfer of real estate resulting not from a deed of conveyance, but from a merger of two or more corporations.

In 1959 Esso Standard Oil Company,[2] a Delaware corporation, and Humble Oil and Refining Company,[3] a Delaware corporation, and Carter Oil Company,[4] a West Virginia corporation—all of which were wholly owned subsidiaries of Standard Oil Company, a New Jersey corporation—were merged into Humble, and all real estate of Esso, which included real estate situate in Pennsylvania, vested in Humble the surviving corporation by operation of law as a result of said merger. Standard Oil Company, as the result of the merger of its three subsidiaries, owned all of the stock of Humble, whereas previously it had owned all of the stock of the three merging corporations, namely, Humble, Esso and Carter.

This merger took place outside of the Commonwealth of Pennsylvania. The Agreement of Merger be-

---

[1] Act of December 27, 1951, P. L. 1742, as re-enacted and amended in 1955 and in 1957 and in 1959, 72 PS §3283 et seq.

[2] Hereinafter called "Esso."

[3] Hereinafter called "Humble."

[4] Hereinafter called "Carter."

came effective under Delaware law when filed, as it was, with the Secretary of State of Delaware on December 31, 1959. Subsequent to the merger, namely, on February 5, 1960, Humble filed a "Statement of Merger" with the Secretary of the Commonwealth of Pennsylvania, who thereupon issued to Esso a "Certificate of Withdrawal" canceling Esso's authority to transact business in Pennsylvania.

In 1958, American Machine and Metals, Inc.,[5] a Delaware corporation, merged with its subsidiary, Hunter Spring Company,[6] a Pennsylvania corporation, at American's office in New York City, pursuant to and in compliance with the law of the State of Delaware, and all the rights, privileges, franchises, powers and assets of Hunter became the property of American. The Secretary of Revenue in 1960 made a purported determination of Realty Transfer Tax in the amount of $8500, alleged to be owing to the Commonwealth by virtue of the transfer of real estate situate in Pennsylvania from Hunter to American, as a result of the merger.

In 1955, Willson Products, Inc.,[7] a Pennsylvania corporation, merged with Ray-O-Vac Company,[8] a Wisconsin corporation, pursuant to the Wisconsin Business Corporation Law. This merger was effected outside of Pennsylvania and was consummated by the filing of Articles of Merger with the Secretary of State of Wisconsin and the Secretary of the Commonwealth of Pennsylvania. As a result of this merger, real estate owned by Willson which was situate in Berks County, Pennsylvania, having a value of over a million dollars, became the property of Ray-O-Vac.

---

[5] Hereinafter called "American."

[6] Hereinafter called "Hunter."

[7] Hereinafter called "Willson."

[8] Hereinafter called "Ray-O-Vac."

The Department of Revenue determined that a transfer tax in the amount of over $10,000 was due upon the transfer of this real estate from Willson to Ray-O-Vac. Each of these companies appealed from the dismissal by the Board of Finance and Revenue of their petition for review and the Court of Common Pleas of Dauphin County reversed and entered a judgment in favor of Willson and Ray-O-Vac.

*No deed or other conveyance of any real estate or bill of sale or assignment was made, executed, delivered or recorded by any corporation involved in any of the aforesaid mergers.* However, Articles of Merger were filed with the Secretary of the Commonwealth and this is an important point in the Commonwealth's contention that a realty transfer tax was due the Commonwealth as a result of each of the aforesaid mergers.

The Realty Transfer Tax Act of December 27, 1951, as amended and re-enacted in 1955, in 1957, and in 1959, the applicable sections of which were the same and were respectively in effect when the mergers above mentioned took place, pertinently provided: "Section 3: Every person who makes, executes, delivers, accepts, [or] presents *for recording* any *document*[9] . . . shall be subject to pay for and in respect to the *transaction* or any part thereof, . . . a State tax at the rate of one (1) per centum . . . which State tax shall be payable at the time of making, execution, delivery, acceptance or presenting *for recording of such document.*"

Section 2 of the Act defines *"Document"* (in part) as:

"Any deed, instrument or writing whereby any lands, tenements or hereditaments within this Commonwealth or any interest therein shall be granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person. . . ."

---

[9] Italics throughout, ours.

And defines *"Transaction"* as:

"The making, executing, delivering, accepting, or presenting for recording of a *document."*

Section 5 provides: "The payment of the tax imposed by this act shall be evidenced by the affixing of a documentary stamp or stamps to every document by the person making, executing, delivering or presenting for *recording such document. . . ."*

Section 9 of the Act provides that *every document* when lodged with or presented *to any recorder of deeds* in this Commonwealth *for recording,* shall set forth therein the value thereof or shall be accompanied by an affidavit showing the value.

Nowhere in the Act are transfers of realty by mergers or consolidations referred to or *specifically* made subject to the tax, nor is there any provision for the payment of tax or the affixing of stamps on documents *"filed"* with the Secretary of the Commonwealth (where merger papers are filed), as distinguished from "recorded" with the recorder of deeds; and the Act significantly failed to provide for the setting forth of value or for any determination of Realty Transfer Tax by the Department of Revenue at the time the merger papers are filed with the Department of Revenue.[10]

In construing and interpreting this Act we do so in the light of the well settled principle that ". . . every tax statute must be construed most strongly and strictly against the Government and if there be a *reasonable* doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer: Good Estate, 407 Pa. [642, 182 A. 2d 721]; Commonwealth v. Allied Building Credits,

---

[10] The Realty Transfer Tax Act was amended and supplemented by the Act of June 7, 1961, P. L. 272, which specifically authorized the Department of Revenue to make a determination or redetermination of the amount of tax due.

Inc., 385 Pa. 370, 375, 123 A. 2d 686; Gould v. Gould, 245 U.S. 151, 153; United States v. Merriam, 263 U.S. 179, 188; Commonwealth v. P.R.T. Co., 287 Pa. 190, 196, 134 A. 455": *Walton Estate,* 409 Pa. 225, 236, 186 A. 2d 32. Accord: *Panther Valley Telev. v. Summit Hill,* 376 Pa. 375, 102 A. 2d 699; *Smith v. Messner,* 372 Pa. 60, 92 A. 2d 417; *Sablosky v. Messner,* 372 Pa. 47, 92 A. 2d 411; Statutory Construction Act, May 28, 1937, P. L. 1019, §58, 46 PS §558.

The construction placed upon The Realty Transfer Tax Act by the lower Court was correct. The Act purports to tax as we have seen every person who makes, executes, delivers, accepts or presents for *recording* any *document.* The word "document" was defined by the Act to mean "any deed, instrument or writing whereby any lands, tenements or hereditaments within this Commonwealth . . . shall be granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person." It is clear (1) that the Act taxed and intended to tax only transactions effectuated by documents which were to be recorded; and (2) that the document referred to in the Act clearly meant any deed or similar instrument *which conveyed to the grantee* or purchaser lands, tenements or hereditaments; and (3) that the stamping of the document and the value of the lands conveyed thereby was to be evidenced and determined when the document was lodged with the recorder of deeds for recording. The Commonwealth's interpretation would require not only a severe straining of the language and meaning of the Act but would likewise require us to ignore or change the above mentioned well settled principles of law which hold that a tax statute—if there be any reasonable doubt as to its meaning—must be construed in favor of the taxpayer.

Although we believe no authority is needed to support this interpretation of the Act, the authorities

strongly support it. In *Sablosky v. Messner,* 372 Pa. 47, an owner and purchaser of land entered into a written agreement of sale which the Commonwealth contended was subject to the Realty Transfer Tax. The Court rejected this contention and said (pages 50-51): "We think it clear that the tax imposed is upon transactions relating to real estate as evidenced by documents as the latter are defined in Section 2 of the Act, with dual liability for its payment. . . . Back of the words used to express the legislative intent is the clear purpose, as evidenced by the definition, to tax *certain transactions pertaining to real estate.*"

Furthermore, the Act clearly pertains to a deed or similar writing and its recording, and not to the filing of any papers with the Secretary of the Commonwealth. In the next place, a merger has never been held to be a transaction relating to real estate.

In *Jones Estate,* 377 Pa. 473, 105 A. 2d 353, the Court, quoting (on page 477) from *Buist's Estate,* 297 Pa. 537, 147 A. 606, said: " 'The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies, forming a new corporate entity. . . . a merger of two corporations cannot be considered as a sale of their property by the constituent companies, . . .' " See to the same effect, *Weinroth v. Homer B. & L. Assn.,* 310 Pa. 265, 269, 165 A. 28; *U. S. v. Seattle-First National Bank,* 321 U.S. 583; *Rochelle Investment Corporation v. Fontenot,* 34 F. Supp. 118; *U. S. v. Niagara Hudson Power Corporation,* 53 F. Supp. 796; *Dodier Realty & Investment Co. v. St. Louis National Baseball Club,* 361 Mo. 981, 238 S.W. 2d 321; *Pittsburgh Terminal Coal Corporation v. Potts,* 92 Pa. Superior Ct. 1; *Segal v. Greater Valley Terminal Corporation,* 78 N.J. Super. 42, 187 A. 2d 374; *National Dairy Products Corporation v. Carpenter* (Mo.), 326 S.W. 2d 87.

In *U. S. v. Seattle-First National Bank*, 321 U.S., supra, the Court held that no Federal documentary stamp tax was payable *upon the merger* or consolidation of a State and National bank and said (p. 590): "There was a complete absence of any of the formal instruments or writings upon which the stamp tax is laid. Nor can the realty be said to have been 'sold' or vested in a 'purchaser or purchasers' within the ordinary meanings of those terms. Only by straining the realities of the statutory consolidation process can respondent be said to have 'bought' or 'purchased' the real property. That we are unable to do."

Furthermore, Section 907 of the Business Corporation Law, Act of May 5, 1933, P. L. 364, §907, as amended, compels us to reach the same conclusion. That Section provides that: "Upon the merger . . . becoming effective, the several corporations parties to the plan of merger . . . shall be a single corporation which . . . shall be that corporation designated in the plan of merger as the surviving corporation . . . . The separate existence of all corporations parties to the plan of merger . . . shall cease, except that of the surviving corporation . . . . All the property, real, personal, and mixed, of each of the corporations parties to the plan of merger . . . *shall be taken and deemed to be transferred to and vested in the surviving . . . corporation . . . without further act or deed. . . .*"

In *Pittsburgh Terminal Coal Corporation v. Potts*, 92 Pa. Superior Ct., supra, the Court well said (pp. 13, 14): "The objections summarized under paragraph (d) above, to the effect that 'the warrant of attorney does not authorize the entry of judgment in favor of the lessor's assigns' and therefore the present appellee cannot enforce the warrant of attorney contained in the original lease, raise the question of the effect of the merger and consolidation of two or more corporations under the Act of May 3, 1909, P. L. 408, as amended

by the Act of April 29, 1915, P. L. 205, upon the rights of action and property of each of the merged corporations. We agree with the court below that the present appellee is not in the position of an ordinary assignee of a lease as, for instance, was the plaintiff in the case of Curry v. Bacharach Quality Shops, Inc., supra. Even if it can be said in any proper sense of the word that the rights of action and property of the constituent corporations are assigned to the consolidated company resulting from the merger, *such an assignment would be by operation of law.* A more accurate description of the transfer would be to say that the consolidated corporation succeeds to the rights of action and property of the constituent companies. The language of the act is that 'all the estate and property, real and personal, and rights of action of each of said corporations, shall be deemed and taken to be transferred to and vested in the said new corporation, without any further act or deed.' "

Another persuasive argument against the contention of the Commonwealth is the fact that in the Legislative Session of 1959 a bill to include within the taxable events listed in The Realty Transfer Tax Act the "filing" of documents with the Secretary of the Commonwealth was defeated.[11] That bill would have made taxable, inter alia, transfers of Pennsylvania real estate resulting from mergers. The failure of the Legislature subsequent to our decision in *Sablosky v. Messner,* supra, to change the law as therein interpreted by this Court creates a presumption that such an interpretation was in accordance with the intent of the Legislature; otherwise it would have changed the law

---

[11] A discussion of the Act of February 9, 1961, P. L. 13, which re-enacted a part of the Act of December 27, 1951 and further re-enacted and amended the Act of June 1, 1959, supra, is unnecessary.

in a subsequent amendment: *Loeb Estate*, 400 Pa. 368, 162 A. 2d 207, and cases cited therein.

We need not decide the contention of one of the taxpayers that it would amount to a denial of due process of law, and consequently be a violation of the 14th Amendment to the Constitution of the United States, for Pennsylvania to tax a transaction which took place in another State.

The Order of the Court of Common Pleas of Dauphin County in Commonwealth v. Willson Products, Inc. and Ray-O-Vac, and the Final Decree of the Court of Common Pleas of Dauphin County in American Machine and Metals, Inc. v. Theodore B. Smith, Secretary of Revenue, and in Humble Oil and Refining Company v. Theodore B. Smith, Secretary of Revenue, is affirmed; costs to be paid by the Commonwealth.