## Commonwealth *v.* Passell, Appellant.

474

Argued May 24, 1966. Before Bell, C. J., Mus-manno, Jones, Eagen, O'Brien and Roberts, JJ.

*Harry J. Rubin,* with him *Krekstein and Rubin,* for appellants.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

Opinion by Mr. Justice Jones, September 27, 1966:

This appeal presents a narrow issue: is the transfer of real estate from a corporation to its sole stockholders, pursuant to a plan envisioning a complete liquidation of the corporation, a transaction which is subject to tax under "The Realty Transfer Tax Act",[1] (the Act), of the Commonwealth? The Court of Common Pleas of Dauphin County held that it was. We disagree and reverse the judgment entered in the court below.

The factual background of this litigation has been stipulated. Craig Realty Corporation (Craig), a do-

---

[1] Act of December 27, 1951, P. L. 1742, as amended, 72 P.S. §§8283-3292.

mestic corporation, incorporated in 1953, maintained its business address in Pittsburgh. On or before July 19, 1962, Craig's total outstanding common stock consisted of ten shares which were owned by Leonard D. Passell, Robert E. Behrman and Benjamin I. Lederman (appellants). On July 19, 1962, by appropriate stockholder and director action, it was decided to terminate Craig's business and to distribute Craig's assets to its stockholders in August 1962. At that time appellants surrendered all their stock to the corporation secretary with instructions to mark the stock "cancelled" on the corporate books and this was done. In August 1962, Craig terminated its business and distributed all its assets. After August 22, 1962, Craig "conducted no business, owned no assets, had no liabilities, received no income and incurred no expenses" with the following exception:[2] since Craig had not been dissolved *formally* it continued to file a Pennsylvania Capital Stock tax report, showing a nominal $1,000 corporate stock value, upon which it paid a $5 tax and also a Corporate Net Income tax report, showing no income and one item of expense, to wit, the $5 capital stock tax.

Craig's sole remaining asset, prior to its distribution, was certain realty located in Pittsburgh and, on August 22, 1962, by deed, Craig distributed this realty to appellants. This deed was recorded August 22, 1962, and, at that time, appellants affixed to the deed Pennsylvania Realty Transfer tax stamps in the amount of $2500.

On January 6, 1964, the Realty Transfer Tax Division of the Commonwealth determined that there was a $4,000 realty transfer tax due in connection with Craig's distribution of said realty and that Craig owed a $1500 balance on said tax with interest from August 22, 1962. Appellants pursued the appropriate steps for

---

[2] Paragraph 5 of Stipulation.

a re-determination of the tax and, finally, the Board of Finance and Revenue, on November 12, 1963, sustained the imposition of the tax. Appellants then appealed to the Court of Common Pleas of Dauphin County which affirmed the imposition of the tax and entered a judgment against Craig from which judgment this appeal has been taken.

Appellants' argument is predicated on the following premises: (a) the Act imposes a tax not on *all* but only on *certain* realty transfers; (b) a realty transfer by a corporation to its stockholders, pursuant to a plan of complete liquidation of the corporation, is not a taxable transfer because it is not a *real* transfer of a beneficial interest *effectuated* by means of a "document", i.e., the deed, and that, absent either or both of these elements, the transfer is not taxable.

The Commonwealth, taking the position that the transaction is taxable, contends that the deed of Craig to appellants falls within the statutory definition (§2) of a "document" since it *conveyed* the corporation's interest in this realty to appellants. The Commonwealth further contends that, upon voluntary liquidation of a corporate business, the Business Corporation Law (§1104, Act of May 5, 1933, P. L. 364, as amended, 15 P.S. 2852-1104) requires that the corporate assets be *paid* or *distributed* to the shareholders by the directors, i.e., by affirmative action, and, therefore, the transfer takes place not by operation of law but only by some affirmative director-action which, in the case of realty, must be by deed.

An examination of the terms of the Act convinces us that it was not the legislative intent to tax *all* but only *certain* transfers of realty and that the type of realty transfer transaction intended to be taxable was such as involved a *real* transfer of an interest in realty in which such interest is *actually conveyed* through the

medium of a "document".[3]  It naturally follows that, if the conveyance of such interest is *by operation of law* and not by a "document", even though a confirmatory document is thereafter recorded, such transaction does not fall within the category of transactions made taxable under the statute.  See: *Sablosky v. Messner*, 372 Pa. 47, 55, 92 A. 2d 411; *Smith v. Messner*, 372 Pa. 60, 92 A. 2d 417; *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 84, 194 A. 2d 162.

The parties to this litigation have devoted considerable effort to ascertain the *nature* and *quantum* of the interest in realty the transfer of which is made taxable under the Act, i.e., a "beneficial interest" or an "equitable interest" or "legal title" or the *entire* property interest.  Appellants take the position that it makes no difference, in the case at bar, whether a "beneficial interest" means an "equitable interest" or the entire property interest and that the transfer of the realty here at issue involves a transfer of neither the *equitable* interest nor *all* the property interest[4] since the court below found that the Act applied even though only the bare legal title was transferred.  The Commonwealth takes the position that the transfer of this

---

[3] The statute defines a "document" as "Any deed, instrument or writing whereby any lands, tenements or hereditaments within this Commonwealth or any interest therein shall be quitclaimed, granted, bargained, sold, or otherwise conveyed to the grantee, purchaser, or any other person" excepting certain specific types of transfers (72 P.S. §3284).  In *Sablosky* (at p. 55) it was said: ". . . a confirmatory deed, whether or not a nominal consideration is recited, is not subject to the tax."

[4] Appellants, in this respect, rely on case law that the shareholders of a corporation are the owners of the equitable interest in the corporation property.  See: *Revloc Supply Co. v. Troxell*, 281 Pa. 424, 126 A. 774; *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280.  Under his theory, appellants were the owners of the equitable interest in this realty; therefore, the transfer could not have encompassed that interest which they already owned nor the *entire* bundle of interests in the realty.

realty involved a transfer of legal title which is taxable as well as a "beneficial interest"—equated with "equitable interest"—which is taxable.

In *Sablosky v. Messner*, supra, we said: ". . . the Act's clear import, despite some lack of clarity in the language employed, is to impose a tax only upon transactions where there is a real transfer of beneficial interest; . . . ." (at p. 55). Both parties to this controversy have spent much time on an interpretation of what this Court meant in *Sablosky v. Messner*, supra, by "beneficial interest". However, the statutory language indicates clearly what the legislature intended. The title of the statute describes its purpose as "An Act to provide revenue by imposing a State tax relating to certain *documents*; . . . ." (Emphasis added) and §2 of the Act defines such "document", inter alia, as a deed "whereby any lands . . . or *any interest therein*" shall be conveyed. (Emphasis added). This description and definition of what constitutes a taxable "document" seems clear beyond question. "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive: [citing authorities].": *Belefski Estate,* 413 Pa. 365, 375, 196 A. 2d 850. When this Court in *Sablosky,* supra, referred to a "transfer of beneficial interest" it was not changing or altering the statutory language: the Court simply used the phrase "beneficial interest" in the statutory sense of "any interest", assuming that the transfer of "any interest" in land carries with it a benefit.

In addition to the use of the phrase "any interest" in a comprehensive sense, the legislature by listing transfers which should not be taxable under the Act further exhibited its intent for an examination of the types of excepted transfers reveals transfers which involve in some instances a transfer of legal title only, in others a transfer of an equitable interest only and in others of all the title, equitable and legal. In view

of the explicit statutory language, we conclude the transfer of *any* interest in land is a taxable transfer if such transfer is *effectuated* by a "document" recorded or presented for recording.

A study of §3 of the Act—the section which imposes the tax—reveals that the realty transfer tax is imposed only upon a transaction in which a "document" is involved and, when §3 is read in conjunction with the statutory definition of a "document" in §2, it is crystal clear that the tax is imposed only upon transactions in which the "document" *conveys* the interest in land. Our case law fully supports this interpretation. In *Smith v. Messner,* supra, we held that an agreement for the sale of an interest in land, although it constitutes an undertaking to execute and deliver an instrument of conveyance, is not taxable; such an agreement, through operation of law, *creates* but does not *convey* an interest in the land. In *Com. v. Willson Products, Inc.,* supra, stating (at p. 84) "that the document referred to in the Act clearly meant any deed or similar instrument *which conveyed to the grantee* or purchaser lands, tenements or hereditaments", we held that a transfer of realty arising as the result of the merger of two corporations, even though articles of merger were filed with the Secretary of the Commonwealth, was not taxable for two reasons (a) the transfer was by operation of law and (b) the articles of merger as filed were not within the contemplation of §2 as a "document".

Did the deed from Craig to its shareholders—the "document" in the case at bar—act as the medium for the *conveyance* of Craig's interest in this land or was such conveyance effectuated by operation of law? Appellants urge the latter and the Commonwealth urges the former.

The Commonwealth distinguishes the merger situation in *Willson* from the liquidation situation in the

case at bar on the basis of the difference in the statutory language which provides for a merger of corporations and that which provides for a liquidation of corporations. The merger statute (The Business Corporation Law, Act of May 5, 1933, P. L. 364, §907, as amended, 15 P.S. §2852-907) provides, inter alia: ". . . All the property, real, . . . of each of the corporations parties to the plan of merger . . . shall be taken and deemed to be transferred to and vested in the surviving or new corporation . . . *without further act or deed.*" (Emphasis supplied).[5] The liquidation statute (Business Corporation Law, supra, §1104, as amended, 15 P.S. §2852-1104) provides, inter alia: "C. . . . Any surplus of cash or property remaining after paying off all debts and liabilities of the corporation shall *be paid to or distributed* among the shareholders by the board of directors, according to their respective rights and preferences." (Emphasis added). From the language of the liquidation statute, the Commonwealth argues that the directors *must* take affirmative action to *effectuate* the transfer of its interest in the remaining realty, i.e., by a "document" in the form of a deed. We disagree.

"On dissolution, the legal title to land passes to the stockholders, and title to the corporate property vests in the stockholders as tenants in common . . . ." Fletcher, Cyclopedia Corporations (Perm. Ed.) (1962 Rev. Vol.), §8134, p. 300 and authorities therein cited. See also: *Mt. Carmel R. Co. v. M. A. Hanna Co.,* 371 Pa. 232, 89 A. 2d 508.[6] When the appellants surrendered

---

[5] Such transfer of property is accomplished not by act of the parties but by operation of law: *Com. v. Willson Products, Inc.,* supra; *American Machinery and Metals, Inc. v. Dougherty,* 78 Dauph. 239; *National Dairy Products v. Gleeson,* 16 Pa. D. & C. 2d 390, 72 Dauph. 112.

[6] The parties stipulated: "Before a Pennsylvania corporation may be formally dissolved, it must apply for and obtain a certificate of dissolution from the Pennsylvania Department of State.

for cancellation their stock certificates then, in the absence of any obligations owed by Craig, Craig's interest in this realty became vested in and passed to its stockholders *by operation of law*. The provisions of the liquidation statute that the "property remaining" in a debt-free corporation "shall be paid or distributed" merely provide the mechanical operation required of the directors for record purposes: by operation of law the transfer of the remaining corporate assets to the stockholders has already taken place and the statutory requirement simply supplements that which has already occurred. We agree with appellants' statement: "The only purpose of the deed in a liquidation and dissolution is simply to place on the record information regarding the transfer much in the same way that articles of merger provide such information in the case of a corporate merger".[7] (Cf. *Com. v. Willson Products, Inc.*, supra).

The deed executed and recorded subsequent to the complete liquidation and dissolution of Craig, was simply confirmatory of that which had been effectuat-

---

In order to obtain such a certificate, it must present to the Pennsylvania Department of State, inter alia, a certificate from the Pennsylvania Department of Revenue, evidencing payment of all taxes claimed by the Commonwealth to be due from such corporation. When a corporation applies for such a certificate from the Department of Revenue it is the unvarying practice of the Department of Revenue to ascertain, inter alia, if such corporation owns any real estate which it is distributing to its stockholders in the course of its total liquidation. If such a corporation has so distributed or is so distributing such real estate, it is the unvarying practice of the Department of Revenue to assess realty transfer tax on this distribution of real estate. Unless and until the corporation pays the realty transfer tax thus assessed, it cannot obtain the certificate from the Department of Revenue and thus cannot obtain a certificate of dissolution from the Department of State." It is, therefore, obvious that *formal* dissolution of Craig cannot be effected until the instant controversy is terminated.

[7] Appellants' brief, p. 16.

ed by operation of law; as a confirmatory deed it did not fall within the category of a "document" subject to the tax.

Summarized, while this transaction did effect a transfer of an interest in this realty, yet such transfer, having been effectuated by operation of law rather than by a "document", is not taxable.[8]

Judgment reversed and judgment entered for appellants.[9]

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I find nothing in the Realty Transfer Act nor any other authority which would exempt this transaction from taxation. I must therefore dissent and would affirm the judgment below on the able opinion of the Commonwealth Court. See *Commonwealth v. Passell*, 84 Dauph. 104 (1965).

---

[8] Appellants point out that in *Commonwealth v. A. B. Farquhar Co.*, No. 523 Commonwealth Docket 1960 (C.P. Dauphin Co.) the Commonwealth entered into a stipulation of record ". . . that deeds made in connection with the liquidation of corporations were not subject to Realty Transfer Tax prior to the amendment of The Realty Transfer Tax Law by the Act of June 1, 1955, P. L. 128" and that the City of Philadelphia—which has a realty transfer tax under an ordinance most similar to The Realty Transfer Tax Act of the Commonwealth—has determined that corporate conveyances to stockholders in liquidation or dissolution are not subject to tax. Such authorities, while of interest, are in no sense controlling.

[9] In *Commonwealth v. Sheraton-Midcontinent Corporation*, 34 Pa. D. & C. 2d 73, 82 Dauph. 336 (1964), relied on by the Commonwealth, the court reached the opposite result. Such decision is no longer authoritative.