## Commonwealth v. Williams

*John L. Brunner*, for appellant.

*George B. Stegenga*, for Commonwealth.

SWEET, P. J., October 31, 1966. — Mervin Williams, an inspection station owner of Atlasburg, Washington County, Pa., was suspended from the operating privilege for two months for a violation of section 819 (f) of The Vehicle Code of April 29, 1959, P. L. 58, 75

PS §819 (f). His violation was to pass for inspection a vehicle with holes in the floor.

Because of the novelty of the question, viz.: "Does suspension fit this crime?" counsel were given a reasonable time in which to furnish authority or analogy which would be helpful in decision. Neither their research nor mine has turned up any case exactly in point, but this may be more indicative of a breakdown in the indexing system than of a paucity of law.

It should be understood at the outset that this case is not the same as the problem presented in Commonwealth v. Stainbrook, Q. S., November sessions, 1963, 130. Stainbrook was charged before a magistrate with a violation of this same section in that he passed a vehicle with leaking, defective brakes. On the facts presented at the bar, Williams is unquestionably guilty of approving a car which he should have declined to pass. He could have been fined by a magistrate, but this is a suspension appeal.

The Commonwealth, acting upon the proposition that one may lose his license for *any* violation of The Vehicle Code, now has suspended Williams' *operator's* permit. This is not the same as Commonwealth v. W. J. Harris and Son, 403 Pa. 598 (1961), where defendant's inspection station authorization was taken away from him. See also Commonwealth v. Grasavage, 27 D. & C. 2d 315 (1962); Appeal of Macar, 28 Fayette 107 (1965). There we can readily see the administrative punishment fits the crime.

Section 618 of The Vehicle Code does squarely provide that the secretary, after hearing, may suspend the license of any person who has committed any violation of the laws of this Commonwealth relating to vehicles or tractors.

The best case for the Commonwealth in this field seems to be Heffelfinger Motor Vehicle Operator License Case, 199 Pa. Superior Ct. 97 (1962). Heffelfin-

ger made a false answer in an application for a certificate of title for a vehicle acquired out of State, concealing that a car had been a taxi. The Superior Court, speaking through Judge Wright, said: ". . . there is no warrant in the statute for limiting the provisions of Section 618 (b)-(2) to so-called 'moving' violations. The Vehicle Code is 'a complete and comprehensive system regulating the use of motor vehicles on the public highways of the Commonwealth.' [Citing cases.] To adopt the construction urged by appellant would be a presumptuous exercise of judicial legislation. Had the legislature intended to limit the suspension power of the Secretary to offenses directly involving highway safety it could readily have done so".

In Pennsylvania, licenses are taken up from people: who fail to pay judgments against them, who, after having a chargeable accident, remain uninsured and then uncollectible, who use an automobile in the commission of a crime, who are involved in fatal accidents while driving, and who are incompetent to drive. It seems a little incongruous to suspend an operator's license for a failure to inspect adequately. This is rather as if a liquor licensee who sold to minors was forbidden to drink, or a farmer who violated the milk control provisions was excluded from dairy bars.

Albeit the inclusive wording of the statute which, as we have seen, provides for the suspension of the license of "any" offender, the case law has developed along less Draconian lines. In Commonwealth v. Baker, 39 D. & C. 294 (1939), where a driver, during suspension, was guilty only of a technical violation of the law in moving his truck some 300 yards in order to avert a breach of the peace, the court held that the secretary should be reversed and the operator's privileges restored. It was held in Commonwealth v. Maselli, 53 D. & C. 434 (1945), that not "every" case of excessive speed warrants the drastic penalty of suspension.

Where an offense was considered trivial, an order of suspension was set aside: In re Suspension License of Jones, 39 Luz. L. R. 271, 9 Monroe 41 (1947). In the case of Waters License, 32 D. & C. 2d 743, 13 Bucks 340 (1963), a parent who unknowingly signed a false affidavit about a minor son's previous conviction was not held accountable, and the suspension was reversed. It was said in Case of Birgfeld Automobile License, 8 Bucks 281 (1958), that ". . . the fact of violation of the Code alone and of itself may *authorize*, but does not *require*, a suspension order". See also Appeal of Soens' Automobile License Case, 5 Bucks 293 (1956). Birgfeld had made an improper pass, and Judge Satterthwaite felt the violation was without aggravation at an early hour in the morning, and sustained his appeal. In Commonwealth v. Shergle, 80 D. & C. 193, 32 Wash. Co. 29 (1951), a suspension was set aside in a case where the operator admittedly drove 55 miles an hour in passing a truck on a clear dry day on a four-lane highway at a time when there was little other traffic thereon and without aggravating circumstances, and had thereafter paid a fine for speeding.

From these and many other similar cases, we deduce that the word "any" has not been universally interpreted to be of the all-inclusive significance which the learned lexicographers give to that term. It has not been construed to mean "every".

It was held in Commonwealth v. Wagner, 364 Pa. 566 (1950), a case often cited in this field, that on appeal to a common pleas court from the action of the Secretary of Revenue, the hearing is de novo and the court has the power to determine independently the merit of suspension. The matter, Wagner says, must necessarily rest in the sound discretion of the lower court, whose action will not be interfered with except for a manifest abuse of discretion or error of law.

In Handwerk Automobile License Case, 348 Pa. 263

(1944), it was said: "The obvious intent of the legislature was to vest in the several courts of common pleas broad discretionary power. . . . In the exercise of the broad power thus conferred by the legislature, the courts are to administer justice according to the evidence and circumstances presented. . . ."

" . . . Nor does a court automatically abuse its discretion by discriminating between the circumstances in which speed violations are committed. On an appeal from the action of the Secretary, the matter of license suspension must necessarily rest in the sound discretion of the court. Not otherwise can justice in such matters be judicially administered": Wagner, supra.

From all this I draw the conclusion that the relation between the Secretary of Revenue and the common pleas judge need not be that of Edgar Bergen and Charlie McCarthy. The court is expected to weigh all the circumstances with judicial discretion, in all the plenary and infinite meaning of that term, as opposed to a mere administrative procedure. We are not required to uphold suspension of "every" violator. It can be deduced that in these circumstances, "any" violation means such out of all as are warranted, rather than each, all and every violation.*

Viewing Williams' act with common sense, mindful of the statutes and the need for highway safety, yet aware that in all things a fastidious proportion should be maintained, I cannot say that his offense shocks me. I can see no close connection between his oversight here and the preservation of life on the highways, or the good order in society. Therefore, it seems right under

---

* We are conscious of the discussion of the meaning of the word "any" in Belefski Estate, 413 Pa. 365 (1964) at 375, and very recently in Commonwealth v. Passell, 422 Pa. 473 (1966) at 478. It is believed that the word "any" has a less comprehensive meaning in the statute here under review than in the taxing statutes construed in those instances.

the circumstances to give some weight to the old maxim "de minimis non curat lex" and sustain his appeal.

### ORDER

And now, October 31, 1966, the appeal will be sustained; however, since Williams factually induced the controversy by his instant oversight, he must pay the costs.