## Bridesburg Corporation v. Township of Whitehall

*E. G. Scoblionko*, for plaintiff.

*Ray R. Brennan*, for defendant.

SCHEIRER, J., December 5, 1967.—Bridesburg Corporation has instituted an action in assumpsit against the Township of Whitehall for the refund of a tax levied and collected in pursuance of Township Ordinance No. 802 imposing a tax upon the privilege of transferring for value by deed title to real property situate in the township. Defendant's preliminary objection in the nature of a demurrer is before us.

The complaint and attached deed reveal that on September 19, 1966, plainaiff executed a deed conveying premises in Fullerton, (not in Hokendauqua as averred), Whitehall Township, to Provident National

Bank, executor under the will of Henry Burgin, deceased. The deed to its sole stockholder was to effectuate a liquidation of the corporation pursuant to a Certificate of Election to Dissolve filed on July 8, 1966, with the Department of State of the Commonwealth of Pennsylvania. The deed was recorded on October 8, 1966, in the office of the Recorder of Deeds of Lehigh County who as agent for the Township collected $227 transfer tax from the plaintiff. It is averred that the transfer was not taxable and therefore the plaintiff is entitled to a refund under the procedure outlined in the Act of May 21, 1943, P. L. 349, as amended, 72 PS §§5566b and 5566c.

The action for a refund is prompted according to paragraph 8 of the complaint and plaintiff's brief by the opinion filed on September 27, 1966, in Commonwealth v. Passell, 422 Pa. 473, 223 A. 2d 24, holding that the transfer of real estate by a corporation to an individual to effect a dissolution is not a taxable transfer within the meaning of the Pennsylvania Realty Transfer Act.

The Act of 1943, as amended, which authorizes the refund of taxes, provides:

"Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys

shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within two years of payment thereof.

"The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise, for recovery of moneys paid as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous". As amended April 4, 1956, P. L. (1955) 1388, sec. 1; 1957, June 21, P. L. 381, sec. 2, 72 PS §5566b.

"In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located". As amended April 14, 1956, P. L. (1955) 1388, sec. 1; June 21, 1957, P. L. 381, sec. 2, 72 PS §5566c.

It is immediately apparent that the complaint does not contain an averment that *a written and verified claim for the refund of the payment* has been filed with *the proper authorities of the political subdivision.* This plus refusal or failure to make the refund are conditions precedent to the right to bring suit.

Plaintiff's briefer states that letters requesting a refund were sent to the township solicitor without response or action. We do not pass upon the question whether filing a claim with a solicitor satisfies the act but it is clear that a *written* and *verified* claim must be filed with the proper authorities, that there must be refusal or failure to pay by the political subdivision and that these facts must be averred. We shall permit plaintiff to file a more specific complaint.

Defendant contends that the plaintiff's pleading is demurrable because it appears that the tax was paid under a mistake of law and therefore not recoverable under the doctrine of Leeds v. Montgomery County, 2 D. & C. 2d 697, decided in 1954. This case, however, involved the Act of 1943 prior to its amendment. The original act was concerned with "erroneous or inadvertent" tax payments such as were paid "under an assumption" that taxes were due and owing, when in fact they were not due and owing. See 72 PS §§5566b and 5566c. Judge Forrest compared the Pennsylvania statute with those of other States, citing authorities, and concluded that under the wording of the 1943 act, recovery for a payment of taxes would be warranted only if made "under a mistaken assumption as to the facts." If a payment was made under a mistake of law there could be no recovery. The act as amended, presumably to enlarge the scope of recovery, now speaks of the payment of taxes, license fees, penalties, fines or other moneys "to which the political subdivision is not legally entitled". See 72 PS §§5566b and 5566c. The words "erroneous or inadvertent" have been deleted. Thus the Leeds case has no application and the plaintiff who seeks a refund must only show that the political subdivision is not legally entitled to the payment.

Under the present posture of the case at bar, we have no obligation nor right to dispose of a demurrer

to an amended complaint not yet filed which may be properly pleaded. However, for what it is worth, we venture the view that the plaintiff's analogy to the holding in Commonwealth v. Passell, supra, is well taken. That case involved the Real Estate Transfer Tax Act of December 27, 1951, P.L. 1742, as amended, 72 PS §§3283-3292, its purpose being to provide revenue by imposing a State tax relating to certain documents, inter alia, a deed "whereby any lands . . . or any interest therein" shall be conveyed. The deed in question transferred realty from a corporation to its stockholders pursuant to a plan of complete liquidation of the corporation. The following excerpt from the opinion indicates the court's view:

" 'On dissolution, the legal title to land passes to the stockholders, and title to the corporate property vests in the stockholders as tenants in common . . .' Fletcher, Cyclopelia Corporations (Penn. Ed.) (1962 Rev. Vol.) Sec. 8134, p. 300 and authorities therein cited. See also Mt. Carmel R. Co. v. M. A. Hanna Co., 371 Pa. 232, 89 A.2d 508. When the appellants surrendered for cancellation their stock certificates then, in the absence of any obligations owed by Craig, Craig's interest in this realty became vested in and passed to its stockholders by operation of law. The provisions of the liquidation statute that the 'property remaining' in a debt-free corporation 'shall be paid or distributed' merely provide the mechanical operation required of the directors for record purposes: by operation of the law the transfer of the remaining corporate assets to the stockholders has already taken place and the statutory requirement simply supplements that which has already occurred. We agree with appellants' statement: 'The only purpose of the deed in a corporate liquidation and dissolution is simply to place on the record information regarding the transfer much in the same way that articles of merger provide such

information in the case of a corporate merger.' (Cf.: Commonwealth v. Willson Products, Inc., supra).

"The deed executed and recorded subsequent to the complete liquidation and dissolution of Craig, was simply confirmatory of that which had been effectuated by operation of law; as a confirmatory deed it did not fall within the category of a 'document' subject to the tax.

"Summarized, while this transaction did effect a transfer of an interest in this realty, yet such transfer, having been effectuated by operation of law rather than by a 'document', is not taxable".

Defendant suggests that the differentiation between "transfer" in the ordinance and "document" in the State Act justifies the tax assessed and paid in this case. If a deed intended to effect a transfer of an interest in realty which transfer had already been effectuated by operation of law was not taxable it is difficult to justify a tax on the privilege of transfer under similar circumstances. Furthermore, the tax in the ordinance is imposed "upon the privilege of transferring for *value*" by deed title to real property. What "value" is involved in a transfer which is "simply confirmatory of that which had been effectuated by operation of law"?

We are not impressed with defendant's position that applying the Passell holding to the transfer on September 19, 1966, would be improper in that it was applied retroactively since the Commonwealth issued new regulations exempting similar transactions effective June 15, 1967, and because the "transfer" in contrast with the recording of the deed took place prior to the date of the opinion. Any determination of whether a political subdivision is or is not legally entitled to a tax as permitted under the Act of 1943, must be made after the tax is paid so that all such rulings must of necessity be retroactive. The regulations adopted by

the Commonwealth in connection with its Real Estate Transfer Tax Act do not govern the administration of the Township Ordinance nor control our rulings. To say that the decision in Passell on September 27, 1966, prevents a determination of the legality of a tax on a transfer of real estate on September 19, 1966, is to defeat the clear purpose of the act permitting refunds of monies to which a municipality is not legally entitled.

Disregarding the pleading defect earlier referred to, we do not think it would be a strain of applicable legal principles to grant the refund requested.

### ORDER

And now, December 5, 1967, defendant's preliminary objection in the nature of a demurrer is deemed a motion for a more specific complaint and is sustained. It is ordered and decreed that plaintiff within 20 days after the service of the within order upon its counsel, file an amended complaint which shall be more specific in conformity with the foregoing opinion.