**Sheraton Corporation of America v. Commonwealth**

*Tice F. Ryan, Jr., Ryan, Newman, Greer & Goldring,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General; *William C. Sennett,* Attorney General, for Commonwealth.

LIPSITT, J., May 19, 1969.—In this appeal from a determination of the Board of Finance and Revenue of the Commonwealth of Pennsylvania, the Sheraton Corporation of America (hereinafter called "Sheraton") seeks a refund of a realty transfer tax in the amount of $11,961.40. The key legal issue enmeshed in a succession of business and realty transactions is whether Sheraton is entitled to an exclusion from tax liability by classifying it as a purchase money mortgagee. The parties have entered into an agreement for the trial of this case without a jury under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688. The facts have been stipulated and will be referred to in the discussion.

Prior to February 7, 1955, the Sherwyn Hotel in Pittsburgh, Pa., was owned by Pittsburgh Sheraton Corporation (hereinafter called "Pittsburgh"), a Pennsylvania corporation. At that time 86 percent of the stock of Pittsburgh was owned by Sheraton, the

appellant, a New Jersey corporation. On the afore-said date, the hotel was sold by Pittsburgh to Penn State Properties, Inc. (hereinafter called "Penn State"). As part of the consideration for the sale, Pittsburgh took a purchase money mortgage on the hotel from Penn State.

On December 22, 1955, Pittsburgh dissolved pur-suant to a plan of liquidation which provided for pay-ment to the minority stockholders in cash and for dis-tribution of the remaining assets including the pur-chase money mortgage to Sheraton. In accordance therewith, the mortgage on the hotel was assigned to Sheraton. Subsequently, Penn State defaulted on the mortgage payments and on December 13, 1961, Sheraton entered judgment on the bond of the mort-gage.

On December 12, 1961, the Allegheny Sheraton Corporation, a wholly owned subsidiary of appellant Sheraton, was formed under Pennsylvania law. The purpose for which it was incorporated was to acquire title and operate the Sherwyn Hotel in Pittsburgh if Sheraton should be the successful bidder at the mort-gage foreclosure sale hereinafter mentioned.

Between December 12, 1961, the date of the incor-poration of Allegheny Sheraton and February 5, 1962, the day of the sheriff's sale, the purchase money mortgage which Sheraton held on the hotel property was transferred to Allegheny Sheraton as a contribution to the capital of Allegheny Sheraton.

The sheriff's sale was held on February 5, 1962. At this sale Sheraton was the successful bidder thus acquiring the equitable title to the property. Subse-quent to this sale, Sheraton directed the Sheriff of Allegheny County to issue his deed to its subsidiary, Allegheny Sheraton. A deed with the Sheriff of Alle-gheny County as grantor and Allegheny Sheraton as grantee was recorded on March 22, 1962. This deed

was submitted to the Recorder of Allegheny County along with a "judicial affidavit of value" which claimed exemption from the Pennsylvania Realty Transfer Tax. The recorder would not accept the deed for recordation without payment of the said tax. Thereupon realty transfer tax stamps were affixed to the deed under protest by Sheraton, and the deed was then accepted and recorded by the Recorder of Deeds.

After refusals of a redetermination of the tax by the Department of Revenue and a petition for review by the Board of Finance and Revenue, Sheraton perfected the appeal to this court.

It is Sheraton's position that the deed from the Sheriff of Allegheny County to Allegheny Sheraton should not be subject to the realty transfer tax, because it is entitled to claim the "purchase money mortgage" exemption of The Realty Transfer Tax Act of December 27, 1951.

The Commonwealth contends the transaction is subject to tax under its interpretation of the legislation.

Section 3 of The Realty Transfer Tax Act of December 27, 1951, P. L. 1742, as amended, 72 PS §3285, provides that:

"Every person who . . . presents for recording any document . . . shall be subject to pay . . . a State tax at the rate of one (1) percentum of the value of the property represented by such document. . . ."

Section 2 of the act, as amended, 72 PS §3284, sets forth that:

"Document . . . does not include . . . any transfer from a purchase money mortgagor to the vendor holding the purchase money mortgage whether pursuant to a foreclosure or in lieu thereof. . . ."

In part, the rationale of appellant Sheraton is based on the assumption that the sole problem in-

volved is the question of the taxability of the transaction because the Sheriff's deed was not issued to the plaintiff in the writ of execution on the judgment obtained on the mortgage bond. Thus it presents an analysis of the reasoning by the Pennsylvania Supreme Court in such cases as Commonwealth v. Willson Products, Inc., 412 Pa. 78 (1963), and Commonwealth v. Passell, 422 Pa. 473 (1966), wherein there were holdings that transfers of realty by mergers or consolidations or by deed from a corporation to its sole stockholders were not taxable. By analogy it was argued that if no tax would have been due if the deed had been taken by Sheraton in its own name, a transfer of title to a subsidiary should not result in the imposition of a tax for it could then have transferred title to the subsidiary by an intra-corporate transaction. After argument before this court, Sheraton was apprised that its status as a purchase money mortgagee was the real issue. This premise requires a scrutinizing of the series of transfers and the application of the law.

The facts show that prior to the Sheriff's deed Pittsburgh sold the property to Penn State and as part of this sale Pittsburgh took back a mortgage on the hotel thereby becoming the vendor-mortgagee of a purchase money mortgage. If Penn State had defaulted at this point and Pittsburgh had then foreclosed on the mortgage and as a result of the foreclosure received a deed to the property, the deed would be exempt from realty transfer tax because Pittsburgh was "the vendor holding the purchase money mortgage." Section 2 of the act as noted above does not include as a taxable document "any transfer from a purchase money mortgagor to the vendor holding the purchase money mortgage." The reason for this exemption is apparent. The vendor of a purchase money mortgage has paid transfer tax on the entire

consideration received on the sale of property even though all the consideration was not received in cash. As part of the consideration a mortgage was taken back and on foreclosure only the property originally conveyed was received which was already taxed. The legislature has properly seen fit to exclude that person from the transfer tax when the property is retaken.

Parenthetically the following definition in Black's Law Dictionary, 4th Edition, is appropriate to consider in connection with the wording of the statute:

"Purchase-money mortgage. A mortgage given, concurrently with a conveyance of land, by the vendee to the vendor, on the same land, to secure the unpaid balance of the purchase price."

In the instant case Pittsburgh dissolved and its majority stockholder, appellant Sheraton, acquired this mortgage. At this point the mortgage in the hands of Sheraton was no longer a mortgage given by the vendee to the vendor on the same property to secure the unpaid balance of the purchase price. The vendor of the property in question was Pittsburgh and not Sheraton.

To further remove the transaction from the provisions of the legislation, it may be pointed out that at the time the foreclosure was held, Sheraton was not actually a mortgagee (purchase money or otherwise) as the mortgage had then been transferred to Allegheny Sheraton as a contribution to capital.

Appellant argues that it has the status as a purchase money mortgagee because in substance the mortgage was the same whether it was owned by a subsidiary or by the parent. It contends that as an assignee it may benefit from the exemption established by the Realty Transfer Tax Act. It cites Oak Hill Development Corporation v. Anderson, 84 D. & C. 442, 64 Dauph. 124 (1952), where an assignment of a lease was involved. This court held that leases are

exempt by the terms of the act, and thus an assignment of a lease could not be taxed. Therefore, it is argued if a purchase money mortgage is exempt, the assignment of a purchase money mortgage should be exempt. In support of its position the appellant refers to the basic legal principle to the effect that in Pennsylvania the law has clearly recognized that an assignee stands in the shoes of an assignor. By this logic any assignee, regardless of whether there was a parent, subsidiary relation or not, would succeed to the statutory exemption.

To the disadvantage of appellant Sheraton, the legislature has stated that the only transaction involving the purchase money mortgage which is exempt is when the transfer is to the "vendor holding the purchase money mortgage." In the current situation Sheraton simply is not the vendor.

Although the words "exempt" and "exemption" are used freely throughout the record, Sheraton also argues that an exclusion from tax is to be construed strictly against the Commonwealth vis-a-vis an exemption which is to be construed against the taxpayer. See Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58, 46 PS §558. Undoubtedly this rule of construction is apposite where the transaction is of the type which is excludable from the imposition of tax: Commonwealth v. High Welding Company, 428 Pa. 545 (1968). However the same act in section 51 provides:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Further, section 33 of the Statutory Construction Act provides:

"Words and phrases shall be construed . . . according to their common and approved usage. . . ."

378

Again, it is clear that Sheraton is not the vendor holding the purchase money mortgage. Hence, whether the language be construed strictly against the taxpayer or the Commonwealth, the arrangement is still taxable.

Inasmuch as the transaction involved here does not meet the statutory requirements so as not to be included in the definition of a document in The Realty Transfer Tax Act, we enter the following

ORDER

And now, May 19, 1969, the appeal from the Board of Finance and Revenue's order dated July 13, 1964, sustaining the imposition of The Realty Transfer Tax in the amount of $11,961.40 in connection with the deed of the Sheriff of Allegheny County to the Allegheny Sheraton Corporation recorded on March 22, 1962, is dismissed.