541 A.2d 401

Gumberg Associates-Chapel Square, a Pennsylvania limited partnership, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued March 21, 1988, before Judges CRAIG and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Templeton Smith, Jr.,* with him, *Richard DiSalle, Rose, Schmidt, Hasley & DiSalle;* Of Counsel: *Stephen L. White,* Vice President and Assistant General Counsel, for petitioner.

*Ronald H. Skubecz,* Deputy Attorney General, with him, *Eugene J. Anastasio,* Chief Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

· OPINION BY JUDGE CRAIG, May 6, 1988:

Gumberg Associates appeal a determination of the Pennsylvania Board of Finance and Revenue requiring Gumberg to pay. realty transfer tax in the amount of $61,280.00.

· The facts, as stipulated by the parties, are as follows. In December of 1981, Gumberg and the Urban Redevelopment Authority of. Pittsburgh (URA) entered into a Contract for Disposition by Sale of Land for Private Redevelopment (contract), whereby Gumberg agreed to purchase property from URA and to construct a shopping mall on the property. The contract also provided that Gumberg could request URA to convey the property's title to the Allegheny County Industrial Develop-

ment Authority (AID) if the conveyance were necessary for Gumberg to obtain construction financing. The contract provided that, if the conveyance to AID occurred, Gumberg would remain obligated to complete the construction as agreed with URA, and if Gumberg defaulted on that obligation, URA would have the same rights and remedies against AID that it would have with respect to a mortgagee with title. The contract was recorded in the Office of the Recorder of Deeds of Allegheny County.

Gumberg obtained $3,500,000 in construction financing from AID, and URA conveyed legal title to AID for $50,000. This conveyance was also recorded in the Office of the Recorder of Deeds of Allegheny County. The parties did not pay a realty transfer tax because URA conveyed the property to a nonprofit industrial development agency.[1] AID leased the property to Gumberg, with the lease providing that, upon repayment of the construction loan, title of the property would "automatically and ipso facto vest" in Gumberg.

After Gumberg completed the first phase of construction, Gumberg obtained permanent financing from a private source. Gumberg repaid the AID loan and, on September 15, 1983, AID conveyed title of the property to Gumberg for the nominal consideration of $1. Gumberg did not pay real estate transfer tax on that transaction.

The Commonwealth of Pennsylvania Department of Revenue informed Gumberg that realty transfer tax was

---

[1] At the time of the transfer from URA to AID, section 1101-C of the Realty Transfer Tax Act, Act of May 5, 1981, P.L. 36, 72 P.S. §8101-C, defined document as follows:

Any deed, instrument or writing whereby any lands . . . shall be . . . conveyed to the . . . purchaser . . . but shall not include . . . transfers to non-profit industrial development agencies. . . .

due in the amount of $61,280 upon the property conveyed from AID to Gumberg, now valued at $6,128,000.

Gumberg raises two issues for this court's consideration. The first issue is whether a transfer of property between AID and Gumberg should be considered as an integral part of a mortgage transaction, exempt from realty transfer tax, where the contract had contemplated a URA conveyance directly to AID, to secure a construction loan, followed by a leaseback and then, upon satisfaction of that loan, a transfer to Gumberg.

The second issue is whether the transfer of property pursuant to the lease agreement between Gumberg and AID, which expressly provided for title vesting "ipso facto" in Gumberg upon repayment of the loan, is a transfer of property by operation of law, and thereby exempt from realty transfer tax.

Because we conclude that the transfer from AID to Gumberg did not occur by operation of law, and is not otherwise exempt from transfer tax, we affirm.

1.

In 1983, section 1102-C of the Realty Transfer Tax Act, 72 P.S. §8102-C provided:

> Every person who makes, executes, delivers, accepts or presents for recording any document . . . shall be subject to pay . . . a State tax at the rate of one percent of the value of the property represented by such document. . . .

Section 1101-C of the Act, *as amended*, 72 P.S. §8101-C, defined document as follows:

> Any deed, instrument or writing whereby lands . . . shall be . . . conveyed . . . but *does not include . . . mortgages.* . . . (Emphasis added.)

Gumberg argues that the transfer from URA to AID, at Gumberg's request to secure a construction loan, and the subsequent transfer to Gumberg were merely transactions executed to effectuate a mortgage, and therefore exempt from tax under sections 1101-C and 1102-C of the Act.

To support its position, Gumberg cites *Hahnemann Medical College and Hospital v. Commonwealth,* 52 Pa. Commonwealth Ct. 558, 416 A.2d 604 (1980). In that case, Hahnemann, under an agreement with the Pennsylvania Higher Education Facilities Authority (PHEFA), conveyed title to *its own property* to PHEFA as security for a construction loan, for construction of improvements to Hahnemann's educational facilities. Under a lease agreement, Hahnemann retained responsibility for maintenance and operation of the property and remained in possession of the property at all times. The lease further provided that, upon repayment of the debt, the property would be reconveyed to Hahnemann. When Hahnemann conveyed the property to PHEFA, the Recorder of Deeds refused to accept the deed unless a transfer tax was paid. Hahnemann contested the transfer tax, asserting that the conveyance to PHEFA was a mortgage. This court concluded that, because the conveyance of the property was made as security for funds loaned to Hahnemann by PHEFA, and because the conveyance was defeasible upon repayment of the loan, the conveyance was a mortgage both in form and substance. *Id.* 52 Pa. Commonwealth Ct. at 566, 416 A.2d at 608.[2]

---

[2] On July 2, 1986, the legislature amended section 1102-C of the Act to explicitly exclude from realty transfer tax transactions similar to the one in *Hahnemann.* Section 8102-C.3 provides:

The tax imposed by section 1102-C shall not be imposed upon:

. . . .

The transactions in this case are distinguishable from those in *Hahnemann*. Unlike *Hahnemann*, this case does not question the transfer *to* the lender, made for loan-securing purposes. Moreover, in this case, Gumberg did not originally have title to the property and URA conveyed title directly to AID. Thus, when AID transferred title to Gumberg upon repayment of the loan, Gumberg, unlike Hahnemann, received title to the property for the first time.

Accordingly, the transfer in this case does not come within any exemption provision in the law or within the *Hahnemann* parallel.

### 2.

Gumberg asserts that, because its AID lease agreement contained a provision that upon repayment of the loan, title to the property would "automatically and ipso facto vest" in Gumberg, the transfer from AID to Gumberg occurred by operation of law and was thereby exempt from realty transfer tax.

In support, Gumberg cites the case of *Commonwealth v. Passell*, 422 Pa. 473, 223 A.2d 24 (1966). In *Passell*, a corporation dissolved, and realty was transferred to the corporation's shareholders under section 1104 of the Business Corporation Law, Act of May 5, P.L. 364, art. XI, *as amended*, 15 P.S. §2852-1104, which required that the surplus property of the liquidated corporation "shall be paid to or distributed among the shareholders." The shareholders subsequently recorded deeds reflecting the transfer of the realty, and the Commonwealth imposed a realty transfer tax. The

---

(14) A transfer from a nonprofit industrial development agency or authority to grantee of property conveyed by the grantee to that agency or authority as security for a debt of the grantee or a transfer to a nonprofit industrial agency or authority.

Pennsylvania Supreme Court reversed, concluding that, in light of corporation law principles reflected in the Business Corporation Law, the property had passed to the shareholders by operation of law. The court held that, under the Real Estate Transfer Tax Act, such conveyances by operation of law, even where confirmatory documents were recorded, were not taxable transactions.

Black's Law Dictionary defines "operation of law" as follows:

> This term expresses the manner in which rights, and sometimes liabilities, devolve upon a person by the mere application to the particular transaction of the established rules of law, *without the act of co-operation of the party himself*. (Emphasis added.)

Black's Law Dictionary, 985 (5th ed. 1979).

In the Supreme Court's view, the transfer of the realty in *Passell* occurred automatically as a result of a *statute;* therefore, the transfer occurred by "operation of law."

However, the inclusion of a clause in the present lease agreement that property will transfer "ipso facto" upon repayment of a loan merely represents an agreement as to the event which will prompt the transfer. In this case, unlike *Passell,* there is no application of a statute or law that effectuates transfer of title to the property from AID to Gumberg. Therefore, the property did not pass by "operation of law," and the transfer is not exempt from realty transfer tax.

### 3.

Finally, Gumberg asserts that, if a transfer tax must be imposed, it should only be imposed on $50,000, the price in the contract between Gumberg and URA, and the amount of consideration recited in the deed convey-

ing the property from URA to AID. Gumberg reasons that it should not have to pay taxes on the amount of increase in the value of the property as a result of its own construction of the shopping mall.

However, section 91.28 of Title 61 of the Pennsylvania Code provides:

> Conveyances of real estate, including any buildings or improvements erected thereon, shall require tax to be paid on the total value of such improved property. *Thus if a purchaser contracts to buy a lot but fails to take title until after the improvements have been constructed thereon, the base for the tax is the actual monetary worth of the real estate as improved.* (Emphasis supplied.)

Gumberg did not take title to the property at the time it entered into the contract, when the property was valued at $50,000, but rather took title after the improvements to the property had been constructed and the property was valued at $6,128,000. Therefore, under 61 Pa. Code §91.28, Gumberg is required to pay transfer tax on the value of the real estate as improved.

Accordingly, we affirm the determination of the Board of Finance and Revenue imposing a realty transfer tax in the amount of $61,280.

### ORDER

Now, May 6, 1988, unless exceptions are filed within 30 days as provided by Pa. R.A.P. 1571(i), the decision of the Board of Finance and Revenue, at Docket No. RRT-8768, dated June 26, 1985, is affirmed.