426 A.2d 1086

BAEHR BROTHERS and Guy L. Warman, Thomas D. Thompson and Robert W. Murdoch, Trustees, Appellees,

v.

COMMONWEALTH of Pennsylvania, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1980.

Decided March 13, 1981.

418

Vincent J. Dopko, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for appellant.

John Michael Studeny, Guy L. Warman and Associates, P. C., Pittsburgh, for appellees.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the Order of the Commonwealth Court is affirmed.

KAUFFMAN, J., filed an Opinion in Support of Affirmance in which LARSEN and FLAHERTY, JJ., joined.

ROBERTS, J., filed an Opinion in Support of Reversal in which O'BRIEN, C. J., and NIX, J., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

KAUFFMAN, Justice.

The sole question presented by this appeal is whether costs may be taxed against the Commonwealth under the Pennsylvania Rules of Appellate Procedure when it is the losing party on appeal.[1]   I conclude that they may and, therefore, would affirm the Order of the Commonwealth Court imposing the cost of printing paperbooks upon the Commonwealth.

---

1.   Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, *as amended*, 42 Pa.C.S.A. § 723.

In *Baehr Brothers et al. v. Commonwealth,* 487 Pa. 233, 409 A.2d 326 (1979), this Court determined that the Commonwealth had improperly levied a realty transfer tax assessment on Baehr Brothers et al., appellees here.[2] Thereafter, appellees filed a Praecipe to Tax Costs of Paperbooks in the amount of $280.10 incurred in their successful appeal. On February 4, 1980, the Commonwealth Court entered an Order directing that costs be taxed against the Commonwealth in favor of appellees. The Commonwealth does not dispute the amount claimed, but challenges the power of the courts to tax costs against it, even in those cases where it is the losing party.

Pursuant to express statutory authorization, this Court has promulgated general rules relating to the imposition and taxation of costs. The Judicial Code, at 42 Pa.C.S.A. § 1726,[3] provides:

The [Supreme Court] *shall prescribe by general rule* the standards governing the imposition and taxation of costs, including the items which constitute taxable costs, *the litigants who shall bear such costs,* and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters. All system and related personnel shall be bound by such general rules. In prescribing such general rules, the governing authority shall be guided by the following considerations, among others:

\* \* \* \* \* \*

(2) *The prevailing party should recover his costs from the unsuccessful litigant* except where the:

(i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

(ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

2. Without making any express order with regard to costs, we reversed an Order of the Commonwealth Court holding that a deed conveying certain real estate was subject to Pennsylvania realty transfer tax.

3. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 1726.

(iii) Application of the rule would work substantial injustice. (Emphasis supplied).

In exercise of the statutory authority thus granted, this Court adopted Pa.R.A.P. 2742:

The cost of printing or otherwise producing necessary copies of briefs and reproduced records, including copies of the original record reproduced under Rule 2151(a) (consideration of matters on the original record without the necessity of reproduction) *shall* be taxable, except as otherwise ordered pursuant to Rule 2155 (allocation of cost of reproduced record) at rates not higher than those generally charged for such work in this Commonwealth. (Emphasis supplied).

Without any exception of the Commonwealth, Pa.R.A.P. 2741 prescribes the manner in which costs *shall* be taxed:

(4) If an order is reversed, without a direction for a new trial, costs *shall* be taxed against the appellee unless otherwise ordered, or unless the lower court shall determine that the matter is not finally closed between the parties. (Emphasis supplied).

Since this Court did not otherwise order how costs were to be taxed, and since the matter is finally closed between the parties, the plain language of Pa.R.A.P. 2741(4) mandates that the cost of printing paperbooks must be taxed against the Commonwealth as the losing party on appeal.[4]

In *Simpson v. Merrill*, 234 So.2d 350 (1970), the Supreme Court of Florida held that a statute awarding costs to the prevailing litigant applies to all parties not specifically exempted, including the state and its agencies:

In [previous cases], this Court held that the State or County may not be made liable for costs in a case involv-

---

4. Appellant argues that the doctrine of sovereign immunity precludes the taxation of costs against the Commonwealth. We disagree. The Legislature has vested this Court with general statutory power to tax costs against *all* litigants, 42 Pa.C.S.A. § 1726, and Pa.R.A.P. 2741 and 2742 were promulgated under that legislative authority. The Commonwealth was a party litigant in the underlying action, which no one argues was barred by sovereign immunity, and the Commonwealth Court had jurisdiction of the cause and of the parties. Incident to that jurisdiction was the power to tax costs.

ing the validity of a tax assessment where such liability is not expressly provided for by Statute. Neither case considered the effect of Florida Statute § 57.041(1), F.S.A. which provides:

"The party recovering judgment shall recover all his legal costs and charges which shall be included in the judgment; but this section does not apply to executors or administrators when they are not liable for costs."

We hold that under the foregoing Statute costs may be taxed against the State and its agencies in favor of the party recovering judgment. . . . Florida Statutes § 57.-041, F.S.A. provides for the recovery of legal costs by the party recovering the judgment in all cases except those specifically exempted. The exceptions in the statutes do not include the State or its agencies and we can find no basis for reading such an exemption into the plain language of the Act.

In *Tunison v. Commonwealth,* 347 Pa. 76, 31 A.2d 521 (1943), this Court held that costs could be imposed on the Commonwealth as the losing party in an eminent domain proceeding under a statute which provided for the imposition of costs in *all* matters relating to eminent domain, but which did not specifically include the Commonwealth:

[S]tatutes relating to costs are to be liberally interpreted in order to justly compensate parties who have been obliged to incur necessary expenses in prosecuting lawful claims or in defending against unjust or unlawful ones.

Appellees here were forced into litigation against the Commonwealth because of the improper levy of a realty transfer tax. On appeal, we sustained appellees' challenge to the levy. *Baehr Brothers et al. v. Commonwealth, supra.* In fairness, since it was the Commonwealth's unlawful action that made the appeal necessary, the Commonwealth, like any other losing party, must pay the costs. As observed by the Supreme Court of Florida:

We are aware of decisions holding the State and its agencies immune from taxation of costs of litigation. We are also aware that governmental agencies today directly

affect the lives and property of private citizens more than at any time in the past. This trend has given rise to increased litigation as individuals contest the demands of government. When, through litigation, these demands are determined to be unlawful, the government, like any other party, should be compelled to pay the costs of the litigation.

*Simpson v. Merrill* at 351.[5]

This Court properly has adopted procedural rules of general applicability to *all* litigants. The Commonwealth, with its vast arsenal of powers and resources, has attempted to impose a tax and has lost the litigation thereby provoked. To now carve an exception in favor of the Commonwealth as losing party and against the prevailing taxpayer parties would be manifestly unjust.

LARSEN and FLAHERTY, JJ., join this Opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

Casting aside not only the legislative judgment contained in the Judicial Code but also the case law of this Commonwealth, the Opinion in Support of Affirmance holds that the Commonwealth, despite its representation of the public interest, can be charged with the costs of a taxpayers paperbooks, solely because the Commonwealth was the unsuccessful litigant on an appeal. I would reverse.

In 1976, the Department of Revenue determined that appellees, trustees of shareholders of a dissolved corporation, owed $880 in realty transfer tax stamps for the transfer, by agreement, of the dissolved corporation's unliquidated realty to appellees, rather than to shareholders. On appeal to the Board of Finance and Revenue, as well as the Commonwealth Court, appellees contended that the transfer occurred

5. The Florida court's reasoning was cited with approval by the Court of Appeals of the District of Columbia in *Dillard v. Yeldell*, 334 A.2d 578 (D.C.1975), which held that in a mandamus proceeding, the court had the power to award costs to a successful petitioner.

by operation of law, and thus was not taxable. See *Commonwealth v. Passell*, 422 Pa. 473, 223 A.2d 24 (1966). Both the Board and the Commonwealth Court rejected appellees' contention. Speaking for the Commonwealth Court, President Judge Bowman observed:

> "[T]he property did not pass to the stockholders by operation of law because they did not simply surrender the stock and receive the realty.... [T]he parties took affirmative action and, approximately one year prior to the dissolution, voluntarily committed themselves in [a] written Agreement to the transfer of the property from the Corporation to the Trustees, rather than to the stockholders.... The transfer was thus effectuated by a 'document' (deed) ...."

32 Pa.Cmwlth. 290, 295, 379 A.2d 336, 338 (1977).

On appellees' further appeal, relief was granted. Finding "no proportionate change in beneficial interest," this Court, in an opinion by Mr. Justice Flaherty, deemed that the Commonwealth Court had improperly held that "form controls over substance." 487 Pa. 233, 238, 239, 409 A.2d 326, 329 (1979). However, in so holding, this Court did not suggest that the Commonwealth had in any respect acted in bad faith. To the contrary, the Commonwealth had simply urged affirmance on the basis of the analysis which the Department of Revenue, the Board of Finance and Revenue, and the Commonwealth Court found persuasive.

On remand, even though the Commonwealth had acted in complete accord with the public interest, appellees sought to place the costs of their paperbooks on the Commonwealth pursuant to Pa.R.App.Proc. 2741(4). Rule 2741(4) of our Appellate Rules provides:

> "Except as otherwise provided by law:
>
>     \*     \*     \*     \*     \*     \*
>
> (4) If an order is reversed, without a direction for a new trial, costs shall be taxed against the appellee unless otherwise ordered, or unless the lower court shall determine that the matter is not finally closed between the parties ...."

Relying solely upon the "plain language" of subsection (4) of the Rule, and without regard to whether "law provides otherwise," the Commonwealth Court granted relief.

In affirming, the Opinion in Support of Affirmance, too, analyzes the record exclusively from the perspective of subsection (4):

"Since this Court did not otherwise order how costs were to be taxed, and since the matter is finally closed between the parties, the plain language of Pa.R.A.P. 2741(4) mandates that the cost of printing paperbooks must be taxed against the Commonwealth as the losing party on appeal."

At 1089. The Opinion, like the Commonwealth Court, fails to consider the "[e]xcept as provided by law" clause contained in the Rule.

Thus the Opinion's analysis does not address dispositive provisions of the Judicial Code. Section 1726 of the Code, 42 Pa.C.S. § 1726, provides that "the following considerations, among others," shall be guides in the allocation of costs:

"(2) The prevailing party should recover his costs from the unsuccessful litigant except where the:

\*    \*    \*    \*    \*    \*

(ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law."

The Note accompanying Pa.R.App.Proc. 2741 quotes the above statutory language and makes clear that, in addition to the language of the Rule, the "guides" contained in Section 1726(2), including (2)(ii), are relevant in the allocation of costs.

The question presented in the litigation forming the basis for appellees' attempt to recover costs falls within both of the categories of questions which the Legislature created under section 1726(2)(ii). A matter involving the taxability of a transfer of the property of a dissolved corporation, where one of the parties is the Commonwealth, must be deemed a "public question." Long before enactment of the Judicial Code, this Court held that

"in the absence of a statute imposing liability upon the Commonwealth for the payment of costs, no such liability exists. (*Gettysburg B. M. A. v. Sherfy,* 117 Pa. 256 [10 A. 758]; *Commonwealth v. Commissioners of the County of Philadelphia,* 8 S. & R. 151; *Commonwealth v. Johnson,* 5 S. & R. 194; see 59 C.J. 332, § 503)."

*Tunison v. Commonwealth,* 347 Pa. 76, 78, 31 A.2d 521, 522 (1943). Surely, as the "plain meaning" of "public question" indicates, the Legislature approved at least this existing rule, prohibiting imposition of costs against the Commonwealth and perhaps intended its expansion to cover those cases involving other political subdivision litigants.

This record also demonstrates that the "applicable law [was] uncertain and the purpose of the litigants [was] primarily to clarify the law." No previous case of this Court had considered the rule established in *Commonwealth v. Passell,* supra, as applied where the transfer, as here, was not made directly to shareholders. And no basis exists for concluding that the appeal was necessitated by any reason other than to clarify the scope of *Passell.*

The Opinion's reliance upon *Tunison,* supra, is misplaced. There, legislation regulating the power of eminent domain expressly authorized courts "to make such orders relative to the payment of the necessary costs incurred as to the court shall appear right and just." Because the legislation applied "without stipulation as to the party exercising such authority," 347 Pa. at 78, 31 A.2d at 522, this Court concluded that "it was the legislative intention to include the Commonwealth within the import of the statute, as a party against whom the court may assess costs." 347 Pa. at 79, 31 A.2d at 523. Here, however, unlike *Tunison,* there is no similar statutory scheme permitting imposition of costs upon a governmental unit. Indeed, there now exists the prohibition against imposition of costs in matters involving a "public question." Thus, although *Tunison* does suggest a policy that cost statutes should be "liberally interpreted," under no principle of statutory interpretation, liberal or otherwise, can it be said that imposition of costs against a litigant representing the public interest has been permitted.

In harmony with the legislative judgment expressed in 42 Pa.C.S. § 1726(2)(ii) and embodied in Pa.R.App.Proc. 2741, the order of the Commonwealth Court should be reversed.

O'BRIEN, C. J., and NIX, J., join in this Opinion in Support of Reversal.