Lily-Penn Food Stores, Inc., et al., Petitioners *v.* Commonwealth of Pennsylvania, Milk Marketing Board, Respondents.

Suburban Milk Dealers Association et al., Intervenors. Atlantic Processing, Inc. t/a Lehigh Valley Farms, Intervenors.

586

Hearing before Judge CRAIG.

*Kevin J. McKeon, Rose, Schmidt, Dixon & Hasley,* with him, *Sheldon A. Weiss,* for petitioners,

*Daniel T. Flaherty, Jr.,* Chief Counsel, with him, *James J. Kutz,* Deputy Attorney General, *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

*Harold Swope, Duane, Morris & Heckscher,* with him, *J. Jackson Eaton, III, Butz, Hudders & Tallman,* for intervenors.

MEMORANDUM OPINION BY JUDGE CRAIG, January 21, 1983:

This proceeding is a sequel to our decision in *Lily Penn Food Stores v. Milk Marketing Board,* 62 Pa. Commonwealth Ct. 597, 437 A.2d 485 (1981), where we decided an appeal from the Pennsylvania Milk Marketing Board which, pursuant to proceedings initiated by the Suburban Milk Dealers Association (Association), had increased the minimum resale prices for milk in Area 1, Zone 2 (Order No. A-837).

In those proceedings, Lily Penn Food Stores, Inc. and Joan Arnone, an individual consumer, opposed the minimum price increases before the board and, after the board had adopted its order essentially granting the Association's request, brought the appeal to this court as petitioners. (In this memorandum opinion, "Lily Penn" refers collectively to those petitioners, who are also the moving parties here.)

In our *Lily Penn* decision, we held that the board failed to use a representative cross-section of dealers in ascertaining a reasonable rate of return, and that the board "abused its discretion" in rejecting evidence on the issue of low fat and skim milk price margins. We therefore reversed Order No. A-837 and remanded the matter to the board for redetermination of the minimum prices, with directions.

Now we have the application of Lily Penn as a party who prevailed, seeking the taxation of costs, including counsel fees, against the board itself, against the four-dealer Association and against the other dealer, Atlantic Processing, Inc. In the appeal, the board had initially been the respondent, and the Association and Atlantic were intervenors.

Summarized, Lily Penn's claim for appeal costs is as follows:

| | |
|---|---|
| Filing fee for the appeal | $ 25.00 |
| Cost of transcripts of hearings before the board | $ 1,559.27 |
| Printing costs (net) as to the briefs and supplemental briefs in this court | $ 8,201.26 |
| Copying costs as to individual papers filed in this court | $ 578.10 |
| Counsel fees | $50,000.00 |

The board, the Association and Atlantic now have filed answers to the costs application, and all parties have filed briefs on the following questions of law:

1. Was Lily Penn's application for costs timely?

2. Is the Milk Marketing Board exempt from liability for costs?

3. On what legal basis, if any, does liability for record and printing costs rest in a milk price case?

4. May Lily Penn's bill for the stenographic expense of the transcript before the board be included in record costs?

5. May Lily Penn's counsel fees be included as part of the costs chargeable against the other parties?

## Timeliness

Although Pa. R.A.P. 3751 now provides that a party taxing costs must file a bill of costs within fourteen days after entry of the final order, that rule cannot apply in this case because it did not become effective until September 13, 1982, months after our decision in *Lily Penn* and after the Pennsylvania Supreme Court's denial of the petition for appeal from our court. Lily Penn filed the present application on September 27, 1982, the fourteenth day following the effective date of the rule. The board and the dealers have not pressed the timeliness issue.

Moreover, no basis for rejecting the claim, at least as to record costs, appears by reason of laches. The passage of six months, between the Supreme Court's denial of appeal in March, 1982 and the filing of the application for costs in September, cannot have prejudiced the respondents in establishing their position with respect to record costs, including printing expenses, because the questions all are issues of law. As to the claim for reimbursement of counsel fees, this opinion will deal separately with all issues pertaining to that claim.

## Liability of the Milk Marketing Board for Costs

The statutory foundation for prescribing rules as to costs is 42 Pa. C. S. §1726, subsection (2) of which reads:

2. The prevailing party should recover his costs from the unsuccessful litigant except where the:

(i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

(ii) Question involved is a public question or where the applicable law is uncertain and the

purpose of the litigants is primarily to clarify the law.

(iii) Application of the rule would work substantial injustice.

The rule applicable here is Pa. R.A.P. 2741, in which subclauses (3), (4) and (5) read:

(3) If an order is reversed, modified or vacated with a direction for a new trial, costs shall be taxed against the appellee, unless otherwise ordered, or unless the appellee causes the matter to be retried below within one year after the remand of the record, in which event the liability for costs shall follow the final judgment on such retrial unless otherwise ordered.

(4) If an order is reversed, without a direction for a new trial, costs shall be taxed against the appellee unless otherwise ordered, or unless the lower court shall determine that the matter is not finally closed between the parties, and the appellee shall bring a new action against the appellant within 30 days after such determination, in which event the liability for costs shall follow the final judgment in such second or other matter relating to the same cause of action.

(5) If an order is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court.

In *Lily Penn*, we reversed the board and remanded the milk price proceedings for further hearings. The board and dealers here have not pursued the theory that such a remand should be treated like a direction for new trial, so as to postpone the issue for at least a year under subclause (3) above. This court therefore will not explore that question; the remand of a

milk price proceeding is in many respects quite different from a remand for a new trial in an ordinary form of court action.

The salient issue, however, is whether or not an independent adjudicative board, here the Pennsylvania Milk Marketing Board, having participated actively in the appeal as a party respondent on the side which did not prevail, can be liable for costs at all.

*Tunison v. Commonwealth*, 347 Pa. 76, 31 A.2d 521 (1943), which allowed costs to be taxed against the Commonwealth in an eminent domain proceeding, provides no parallel because (1) the special language of the eminent domain statute was an important factor in that case, and (2) this case is distinguishable because the Commonwealth party here is an independent administrative agency having the function of an adjudicative tribunal, in a role different from that which the Commonwealth occupies in seeking to defend against a claim for damages.

*Baehr Brothers v. Commonwealth*, 493 Pa. 417, 426 A.2d 1086 (1979), in which a divided Supreme Court affirmed a cost-taxing order of this court, is similarly distinguishable because it involved the Commonwealth as a party seeking to levy a tax assessment.

Thus in this case, where a business enterprise in competition with other parties (intervenors in this court) is seeking to recover costs against the adjudicative tribunal itself, as well as against those competitors, we have a situation for which no precedent is available. Lily Penn has not presented any Pennsylvania authority for the proposition that costs can be taxed against an adjudicative tribunal, even where—as is our custom in Pennsylvania—counsel for that tribunal participates actively in defending its decisions upon appeal. Decisions from other states, where the administrative structure is necessarily different, are not helpful.

592

The appropriate foundation for allocating costs in these cases is Pa. R.C.P. No. 2741(5), permitting costs to be allowed "as ordered by the court" when "an order is affirmed or reversed in part." When this court reviews decisions of adjudicative agencies, we often do not and cannot flatly reverse the decision, particularly where a specialized agency such as the Milk Marketing Board is involved. As well illustrated by this case, we reversed, or perhaps more properly vacated, the decision of the administrative agency and remanded the proceeding for further consideration by that agency in accordance with the legal principles identified upon review.

Hence, with Pa. R.C.P. No. 2741(5) as the appropriate guide here, this court's decision must be that the Milk Marketing Board is not liable for costs as an external party would be, any more than a common pleas court should be held liable for costs if a judgment is reversed. Of course, if an administrative adjudicative tribunal ever goes beyond the commission of adjudicative error, so that it overreaches and culpably violates the law, remedies are available in separate proceedings, just as would be true with respect to a court. No great imagination is required to envision the chaos which would confront this court if every appellant, after succeeding in having us reverse a decision of the Workmen's Compensation Appeal Board or Unemployment Compensation Review Board, or a decision of any one of dozens of the other tribunals we review, were given warrant then to proceed to have us assess costs against that tribunal as a "punishment"—the word "punishment" being one of the terms literally used by Lily Penn here.

*Liability for Record and Printing Costs*

Proceeding to consideration of the claims for record and printing costs against the Association and

Atlantic as remaining parties, the claim for copying (in office or elsewhere) copies of individuals' papers in this court, in the amount of $578.10, must fall at the outset because Lily Penn has given us no authority for including such an item; Pa. R.C.P. No. 2742 permits the expense of printing briefs and reproduced records to be brought within the framework of costs, but neither that rule nor any other says anything about copy costs with respect to individual papers.

As to record costs (the filing fee) and the printing costs, Pa. R.A.P. 2741(5) and 2742 establish prima facie a basis for Lily Penn's claim to recover those amounts, unless recovery is barred by the exceptions in 42 Pa. C. S. §1726(2), negating cost recovery where the:

(i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

(ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

(iii) Application of the rule would work substantial injustice.

Here the first exception, based on the existence of a fund, is clearly not applicable. There is no fund here in the sense clearly intended by the rule—that of a judicially-managed fund. The court must reject that concept both as a shield for the respondent dealers and also as a basis for Lily Penn's claim for counsel fees, discussed further below.

As to the record and printing costs, the dealers primarily press the point of clause (ii), that a milk price proceeding involves a public question and that this case involved the clarification of uncertain principles of law.

Of course, if the Commonwealth Court of Pennsylvania were to interpret "public question" in that broad sense, costs could never be assessed against a losing party in any case coming to this court because our unique jurisdiction involves public questions exclusively. The *Lily Penn* milk price appeal did not involve a public question in the sense intended by the rule. The Association's dealers initiated the proceeding for their own very specific economic purpose of having the board raise the minimum milk prices which they could charge. The proceeding was not intended to resolve the typical public question, such as the constitutionality of an important new public program, nor was it designed to clarify a particularly uncertain area of the law, in the sense that bond issue test cases are brought, for example, with respect to public bond issues for novel purposes.

The dealers' purpose was not "primarily to clarify the law." Their purpose was primarily to get higher milk prices. This was a milk price fight, not a declaratory judgment pro bono publico. Although we hope that our court's decision has made some contribution to clarifying the statutory principles applicable to milk price determinations, it operated simply to resolve differing interpretations of the law, just as courts do in every case in which questions of law are raised.

Although the dealers claim that they should not be "penalized" by suffering the imposition of costs where they have pursued an acceptable means of refixing minimum milk prices, by the same token, consumers and others who have defended against their request for increased prices should not be doomed never to recover their costs when they prevail. The right of the dealers to seek price changes should not be chilled by leaving them always to bear the costs of

appeal, but similarly the right of a consumer or competitor to appeal a board decision should not be chilled in the same manner.

The order here will tax the filing fee and printing costs against the dealers. The taxation of costs will include Atlantic jointly and severally liable with the others; although Atlantic has sought to be exempted on the basis that its substantive position has not differed from that of Lily Penn as fully or as constantly, great confusion and difficulty would ensue if courts were called upon to establish varying degrees of losing parties, or to invent a theory of comparative loss of litigation.

### Inclusion of the Stenographic Expense of a Transcript Copy

As noted in the summary of figures listed above, Lily Penn also seeks to recover $1559.27 for a copy of the transcript of board hearings, which Lily Penn obtained particularly for preliminary supersedeas proceedings in this court, before the board lodged its official transcript as part of its return of the record to this court. Where the tribunal being reviewed submits an official original record, neither any statute, rule, precedent or experience in practice provides any basis for this court to tax upon the losing party the expense of an additional copy of the transcript which a party has elected to obtain, even if that election was a tactically sound step and not merely taken for convenience.

### Counsel Fees

Of course, the most strongly contested issue is Lily Penn's claim for $50,000 in counsel fees.

At the outset, Pa. R.A.P. 2744 and 2751, dealing with "further costs and damages" where the appellate court determines that an appeal has been frivolous, has no application because Lily Penn's appeal,

having been successful, obviously was not frivolous in the estimation of this court.

We begin with 42 Pa. C. S. §1726(1) which states:

(1) Attorney's fees are not an item of taxable costs except to the extent authorized by section 2503 (relating to right of participants to receive counsel fees).

The provision referred to, 42 Pa. C. S. §2503, in pertinent part, reads:

The following participants shall be entitled to a reasonable counsel fee of the taxable costs of the matter:

. . . .

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

(8) Any participant who is awarded counsel fees out of a fund within the jurisdiction of the court. . . .

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

As noted above, (8) is inapplicable because there was no fund within the jurisdiction of this court. Nor are the common-benefit or private-attorney-general theories applicable on behalf of the successful business competitor here.

Lily Penn's brief contains a lengthy and enthusiastic recitation of contentions that (7) and (9) apply because various actions of the board and the dealer opponents were arbitrary, dilatory, obdurate or otherwise vexatious or in bad faith. Although Lily Penn claims that the record itself will substantiate virtually all of these claims, several of the claims rest upon mat-

ters which either are outside the record or are averred only in a dissenting opinion of the consumer member of the board.

The key point is that we are here dealing with the assessment of costs of the appeal. There is no authority authorizing us to review for punishment purposes how the board conducted its hearings or how the opposing dealers proceeded before the board. The dealers cannot be faulted for commencing their price proceeding; they had a right to do so. Access to administrative tribunals cannot be discouraged by a threat of heavy costs if one loses.

The conduct of the appeal before this court was not burdened with any dilatory, obdurate or vexatious conduct. We would hope that, if such had been the case, the members and staff of this court would have early taken steps to end such conduct; it did not exist here.

This court therefore will not tax counsel fees against the losing parties as part of the costs.

### Conclusion

In applying the conclusions reached in this opinion —to tax the record filing fee and printing expense against the losing dealers—we recognize that the Association actually represents four dealers, while Atlantic is one dealer alone. Therefore, the reasonable approach is to assess liability for four-fifths of those costs against the Association and liability for one-fifth against Atlantic.

### Order

Now, January 21, 1983, upon consideration of petitioners' verified application for taxation of costs on appeal and allowance of reasonable counsel fees as part of the tax costs, pursuant to the pleadings and briefs of the parties, it is ordered that:

598

The Chief Clerk shall tax costs in the total amount of $8,026.26 (consisting of $8,001.26 printing expense and $25.00 filing fee) against the intervenors of record here, with four-fifths of that sum being apportioned to the Association representing four dealers, and one-fifth of that sum being apportioned to Atlantic Processing, Inc., t/a Lehigh Valley Farms. Petitioners other requests for costs are denied.